[Crim. No. 6282. Second Dist., Div. Two. Mar. 27, 1959.]

THE PEOPLE, Respondent, v. DONALD C. PATTERSON, Appellant.

Morris Lavine for Appellant.

Stanley Mosk, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

FOX, P. J.—A jury found defendant guilty of violating Health and Safety Code, section 11714, in that he unlawfully furnished a narcotic (marijuana) to Lois Mae Aleshire, a minor. He has appealed from the judgment and from the order denying his motion for a new trial.

Viewed in the light most favorable to the party successful in the trial court (see *People* v. *Caritativo*, 46 Cal.2d 68, 70 [292 P.2d 513]), the following is a summary of the pertinent facts: On July 27, 1957, Miss Aleshire, then 16 years of age, accompanied Bob Jones and a boy named Allen to the home of a girl named Linda, in the Echo Park district of Los Angeles. They arrived around midnight. There were a number of people at Linda's home. While Miss Aleshire was with Bob Jones, talking with some other people, defendant inquired of her whether she and Bob wanted to "toke up," which she understood to mean smoke marijuana. If so, defendant advised them to go downstairs to the bedroom. She and Bob went on downstairs as suggested by defendant; he followed them shortly. When he came into the bedroom he produced a cigarette, lit it and handed it to Miss Aleshire. She took a puff and then handed it to Bob. The cigarette was then rotated among the three, who were the only persons in the room. When the cigarette was almost consumed, defendant took the back of a match box and rolled it until it was round, making a kind of cigarette holder out of it. This is called a "crutch." Then defendant put the remainder of the cigarette into this crutch and the three of them continued to smoke it until it was entirely consumed. Miss Aleshire had four or five puffs or drags on this cigarette.

The cigarette was shorter and smaller in diameter than an ordinary cigarette. It was firmly wrapped and "tucked in" at both ends. Before the cigarette was smoked it was uncapped; that is, one end of the cigarette was squeezed until the tucked in part came out. The cigarette made a popping noise when it was being smoked, as there was a seed in it; it smelled like burning leaves. Approximately a half hour later another such cigarette was produced and lit by defendant and was smoked. While smoking the cigarette and for some period thereafter Miss Aleshire experienced certain physical sensations: her head felt big and her throat and mouth felt dry; later she became thirsty; she was happy and laughing. These sensations lasted about an hour and a half. After the expiration of that period she felt sleepy, and became hungry, because she "was smoking marijuana." Her happy feeling had disappeared; she was tired and wanted to go home and go to bed.

Prior to this incident Miss Aleshire had smoked this type of cigarette some 10 or 15 times. Smoking such cigarettes, she said, makes you "feel like you're up on clouds." These cigarettes are about 2½ inches long and burn faster than the ordinary type. She had rolled some of these cigarettes herself on prior occasions; she knew what a "crutch" for smoking marijuana was, and was familiar with other jargon of users.

Officer Edwin O. Hall, of the Los Angeles Police Department, who had had special training in the field of narcotics and extensive experience over a period of years with narcotic users and the effect of smoking marijuana cigarettes upon the user, gave testimony relative to the technique of making such cigarettes, their size as compared to an ordinary cigarette, and the manner of smoking and the odor therefrom. In response to hypothetical questions based on the testimony of Miss Aleshire, Officer Hall expressed the opinion that the cigarette Miss Aleshire smoked on the occasion in question was a marijuana cigarette.

While defendant admitted attending the party at Linda's home on July 29th, and that Bob Jones, whom he talked to briefly, arrived around midnight, he did not remember seeing Miss Aleshire there, and denied furnishing her with a marijuana cigarette, or that he had ever seen her smoking marijuana. He denied having gone downstairs to the bedroom that night. He recalled that "Linda was at the top of the stairs keeping everyone from downstairs because of the baby being asleep down there" and that the baby was a light sleeper. Defendant admitted that he had contacted Robert

Jones some four or five days prior to the trial, at which time he asked him to testify that he was not present at the party on July 29th.

In rebuttal, Jones testified that he had known defendant for some nine months; that he took Miss Aleshire to the party at Linda's home on July 29th; that another boy named Allen was with them; that they arrived around midnight; that Miss Aleshire, defendant and the witness went downstairs to a bedroom where defendant produced the cigarette in question, lighted it, took one or two puffs and handed it to Miss Aleshire, who took some puffs, and that two or three cigarettes of this same type were smoked downstairs that night. Jones further testified that defendant contacted him two or three days before the trial and requested him to testify in the negative as to whether Jones was downstairs; whether he was ever given any marijuana by defendant; and as to any question which would implicate defendant.

During the course of deliberations of the jury, one of the jurors became ill. This juror was excused by the court. "By stipulation of counsel and the defendant personally," the trial continued with the remaining 11 jurors resuming deliberations and ultimately rendering a verdict of guilty.

Three affidavits based on asserted newly discovered evidence were submitted in support of the motion for a new trial. These were signed by defendant, Robert and Carol Lee Tuttle, and Stewart and Cathy Bernstein.

Stewart Bernstein testified during the course of the hearing on the motion that he was present at the party at Linda's home on July 29th, as was his wife Cathy. According to their affidavit, Cathy became ill sometime before midnight and went downstairs to Linda's bedroom to lie down; that she was accompanied by her husband, Stewart; that they remained in the bedroom until the party broke up at approximately 2 a. m.; that there was only one bedroom downstairs and that they occupied that bedroom without anyone else being present, and that neither Miss Aleshire, Bob Jones, nor defendant entered said bedroom during that evening. At the hearing Stewart testified that he was a friend of defendant's, having known him prior to the party; that he heard about defendant's arrest and the reason therefor from several sources prior to Christmas 1957. (The trial started on January 29, 1958.) He further testified that he had seen Linda after having heard of defendant's arrest and that he discussed with her, casually, the reasons for the arrest.

At the hearing on the motion for new trial, Officer Hath-

away, of the Los Angeles Police Department, testified that Robert and Carol Lee Tuttle were present in the courtroom every day during defendant's trial; that they also talked with the defendant during the trial. After receiving this evidence and hearing argument, the court denied defendant's motion for a new trial.

In arguing that the evidence is insufficient to support the verdict and judgment, defendant also argues that the court erred in receiving evidence from Officer Hall on the effect of smoking marijuana cigarettes; that no proper foundation was laid for his opinion that the cigarette Miss Aleshire smoked on this occasion was a marijuana cigarette; and that in any event the officer's opinion on this question invaded the province of the jury.

We shall first consider defendant's contention that the court erred in permitting Officer Hall to testify as to the effect of smoking marijuana and to express the opinion that the cigarette Miss Aleshire smoked at the party in question was a marijuana cigarette. Defendant argues no proper foundation was laid; that is to say, that the officer was not qualified to give an expert opinion on these matters. This same problem was raised in *People* v. *Flynn,* 166 Cal.App.2d 501 [333 P.2d 37], with respect to this particular officer. In the Flynn case, as here, defendant was charged with furnishing a minor with marijuana cigarettes which the quartette, including the minor, smoked. In the Flynn case, Presiding Justice White detailed the background, training and experience of Officer Hall (pp. 505-507), which is substantially the same as that in the instant record; analyzed the principles relating to the qualifications and the opinion testimony of an expert witness; reviewed the applicable authorities and concluded: ". . . we are satisfied from the testimony given by Officer Hall . . . that he had a thorough knowledge of marijuana . . . gained through experience in interviewing addicts and study, not possessed by the average man. He thus qualified as an expert and as such his opinion was properly received." (Pp. 509-510.) We are in accord with this conclusion. (See *People* v. *Winston,* 46 Cal.2d 151, 155 [293 P.2d 40]; *People* v. *Barbera,* 50 Cal.2d 688, 691 [328 P.2d 973]; *People* v. *Rios,* 127 Cal.App.2d 620, 621 [274 P.2d 163].)

Defendant argues, however, that Hall's expert testimony, based on a hypothetical question;[1] was not properly

---

[1]Officer Hall was asked: ''Assume for a minute that a person has smoked a cigarette and that either while smoking that cigarette or shortly thereafter that person feels the following sensation: That

received because it did not take into account the effect upon Miss Aleshire of two dexamil spansules she had taken earlier that evening. The record reveals, however, that defendant's trial counsel, upon cross-examination of Hall, fully explored the reactions produced by taking dexamil[2] and their comparison with the effects of smoking marijuana. Therefore, that which was assertedly improperly omitted from the People's hypothetical question was adequately covered by the defendant's cross-examination of Hall. It is thus apparent that there was little or no chance of the jury being misled by Hall's opinion-response to the People's hypothetical question.

We turn to defendant's contention that Officer Hall's expert testimony invaded the province of the jury. The controlling principle on this question is thus stated in *People* v. *Wilson,* 25 Cal.2d 341, at page 349 [153 P.2d 720]: "There is no hard and fast rule that the expert cannot be asked a question that coincides with the ultimate issue in the case. 'We think the true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved. . . . Ofttimes an opinion may be received on a simple ultimate issue, even when it is the sole one, as for example where the issue is the value of an article, or the sanity of a person; because it cannot be further simplified and cannot be fully tried without hearing opinions from those in better position to form them than the jury can be placed in.' " We are here dealing with a problem with which the average person is not well informed. It could not be further broken down or simplified. The expert was in a much better position to form an opinion as to the contents of the cigarette than the jury because, as pointed out in *People* v. *Flynn, supra,* pages 509-510, "he had a thorough knowledge of marijuana . . . not possessed by the average man." There was clearly no error in receiving the

person's head feels large, the person's throat feels dry and the person is thirsty, that this sensation lasts for about an hour and a half, and that at that time, at the end of the hour and a half, that person then feels sleepy and wants to eat a lot and no longer feels happy in contrast to a happy feeling during the hour and a half. Do you have any opinion as to what type of cigarette that person smoked to get those effects?" Defendant's objection to this question on the ground that it did not contain all of the evidence was overruled.

[2]Although defendant objected to Hall's being permitted to testify as an expert with respect to marijuana, he did not, however, raise any such objection respecting Hall's testimony pertaining to the effects of dexamil. In fact, it was defendant himself who asked these questions.

expert opinion of Officer Hall that the cigarette Miss Aleshire smoked was a marijuana cigarette. (*People* v. *Flynn, supra.*)

█ We shall now consider defendant's argument that the evidence is insufficient to support the judgment. The testimony of Miss Aleshire and Bob Jones adequately established the fact that defendant provided the cigarette in question, lighted it, and handed it to Miss Aleshire, who took several drags on it. The testimony of Miss Aleshire that she "was smoking marijuana," in light of her familiarity with such contraband (see *People* v. *Candalaria,* 121 Cal.App.2d 686, 690 [264 P.2d 71]), her description of the sensations and effects of smoking the cigarette and the expert's opinion, based thereon, that it was a marijuana cigarette support an inference that it was in fact marijuana. Finally, on this phase of the case, does the evidence justify an inference that defendant knew this was a marijuana cigarette? In our opinion it does. The withdrawal of defendant, Miss Aleshire and Jones from the other members of the party in order to smoke this cigarette, is not without significance, as is defendant's familiarity with the jargon of marijuana smokers and the mechanical technique by which a cigarette can be completely consumed. The statements and conduct of the defendant, as testified to by Miss Aleshire, indicate defendant knew this was marijuana. Defendant's effort to get Jones to testify falsely indicates a consciousness of guilt. (*People* v. *Moore,* 70 Cal.App.2d 158, 163 [160 P.2d 857].) When all these facts are considered, they "justify the inference of guilt" (*People* v. *Deysher,* 2 Cal.2d 141, 149 [40 P.2d 259]) drawn by the jury. Therefore it cannot be said that the evidence is insufficient as a matter of law to sustain the conviction. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].)

█ Defendant contends that the court erred in proceeding with the trial upon excusing a juror who became ill after the jury had begun its deliberations. He argues that neither he nor his counsel could waive the right to a single juror after deliberations had started, and that by the discharge of this juror he was in jeopardy. We find no merit in this contention.

It will be recalled that upon one of the jurors becoming ill and being excused by the court the trial continued and the remaining eleven jurors resumed their deliberations "by stipulation of counsel and the defendant personally . . ." California Constitution, article I, section 7, provides that a trial by jury may be waived in all criminal cases by the consent of both parties, expressed in open court by the defendant and

his counsel. Our courts have held that pursuant to this provision a defendant and his counsel can consent to a trial by 11 jurors, and that the court has jurisdiction to pronounce judgment on such a jury's verdict. (*People* v. *Clark*, 24 Cal. App.2d 302 [74 P.2d 1070] ; hearing den.; cert. den., 304 U.S. 574 [58 S.Ct. 1049, 82 L.Ed. 1538].) In holding the waiver effective and the verdict valid, the court stated (p. 304): ". . . The defendant was authorized by article I, section 7, of the California Constitution to, and did in open court formally waive the absence of the twelfth juror, consenting to be tried by the remaining eleven jurors. That procedure did not divest the court of jurisdiction to pronounce judgment. There is no sound reason why a defendant may not waive a part of a jury since the constitutional provision authorizes him to waive the entire jury."

Defendant calls attention to Penal Code, section 1123, which provides for the discharge of the entire jury where a juror becomes ill or otherwise unable to perform his duty and there is no alternative juror available, and argues that such provision is mandatory and cannot be waived by the defendant. The settled law, however, is contrary to the defendant's position. In *People* v. *Williams*, 128 Cal.App.2d 458, 465 [275 P.2d 513], the court held that section 1123 is not mandatory and that "this provision may be waived." The fact that the jury had retired to deliberate when one of the jurors became ill and was excused should have no effect whatever upon the application of the foregoing principle. There is no sound reason why a defendant may not waive the participation of a juror in the deliberations of that body just as he may waive the absence of a juror during the course of taking testimony.

▇ There is no merit in defendant's contention that the court abused its discretion in denying defendant's motion for a new trial. ▇ The basic rule is stated in *People* v. *Greenwood*, 47 Cal.2d 819, at 821 [306 P.2d 427] : "The granting or denial of a motion for a new trial on the ground of newly discovered evidence rests in the sound discretion of the trial court" and that an appellate court will not interfere except upon a clear showing of an abuse of such discretion. ▇ In order to secure a new trial on the ground of newly discovered evidence it must appear, *inter alia*, that " . . . the party could not with reasonable diligence have discovered and produced it at the trial." (*People* v. *Sheran*, 49 Cal.2d 101, 111 [315 P.2d 5].)

The principle in the Sheran case disposes of any claim for a new trial based on the affidavit of Robert and Carol Lee Tuttle for the reason that the testimony at the hearing on the motion for new trial disclosed that these parties were in daily attendance at the trial and conferred with defendant during the course of the trial. The testimony of Stewart Bernstein on this hearing was such as to lack persuasiveness. The trial judge may well have disbelieved the affidavit of Bernstein and his wife. The trial judge simply exercised his judicial discretion in denying defendant's motion for a new trial. There is no indication that he in any way abused that discretion.

Judgment and order affirmed.

Ashburn, J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 20, 1959.