475 P.2d 1008

**STATE of Utah, Plaintiff and Respondent,**

**v.**

**Harold HEEMER, Defendant and Appellant.**

**No. 11688.**

Supreme Court of Utah.

Oct. 27, 1970.

Richard J. Leedy, Salt Lake City, for defendant-appellant.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Asst. Atty. Gen., Salt Lake City, for plaintiff-respondent.

CROCKETT, Chief Justice:

Defendant was convicted by a jury of the crime of uttering and passing a ficti-tious check (Sec. 76–26–7, U.C.A.1953). He seeks reversal of his conviction on two grounds of error:

(1) Permitting reference in the evidence to the fact that the defendant had used another name;

(2) That the verdict was invalid because the jury which rendered it consisted of only seven persons.

### Use of Two Names

The evidence concerning the use of an alias about which the defendant complains relates to the testimony of an officer from the State Driver's License Division, as shown by the following excerpt from the record:

Q. * * * Did you receive a request from our office to investigate the driv-ing record of a gentleman by the name of Harold Heemer and also Richard Feeney?

A. I had a request from the District Attorney.

MR. RICHARDS: (interposing) Your Honor, at this time I would object to the line of questioning upon the grounds that it's immaterial, and the question involved in this trial here today is whether or not this is a false and fictitious check.

It matters not whether Mr. Heemer has a driver's license under another name than Mr. Harold Heemer.

I don't see how it makes any difference. We're willing to admit or stipulate that Mr. Heemer has also used the name of Mr. Richard Feeney, but I don't know how it plays a role in the trial today.

[Discussion]

\* \* \* \* \* \*

THE COURT: Do you stipulate that he has also used the name of Richard Feeney?

MR. RICHARDS: Yes, we do. But I think it's immaterial and I don't see why we need to be delayed—

The defendant's driver's license application with attached photo was introduced in evidence. The check in issue, purportedly signed by an "Ethel Norris" bore a handwritten bank account number which differed only slightly from the number of the

account number on another check, which the defendant admitted having issued under the name of Richard Feeney, but denied that he had written the account number thereon, and said he could not identify the number because there was an "0" missing. The position of the State is that the close similarity of numbers on the questioned check and the defendant's bank account could be regarded as tending to show that the defendant had his own bank account number in his mind and placed it on the check drawn by him under the allegedly fictitious name of "Ethel Norris."

We have no disagreement with cases cited which hold that under certain circumstances it was prejudicial error to inject evidence concerning a defendant's use of different names.[1] But this would be so only where it was done solely for the purpose of reflecting unfavorably upon him and besmirching his character *and* where there is a reasonable likelihood that it may have adversely affected the verdict. However, we do not see any such circumstance as existing here. The controlling fact is that the State had a purpose in presenting the evidence in question in that it could reasonably be regarded as tending to prove one aspect of the total picture of the alleged crime. Supplementing this, it is pertinent to observe further: that instead of making and standing upon an objection, it was the defendant's own counsel who got the matter into evidence by his offer to so stipulate. Moreover, the defendant offered what appears to be quite a plausible and satisfactory explanation of his use of the other name. From what we have said above, we see no basis for concluding that the evidence as to his use of two names could be regarded as purposed to besmirch defendant's character. Consequently it was not error prejudicial to him requiring a new trial.

### The Verdict of Only Seven Jurors

■ During the course of the trial one of the eight jurors became ill. Pursuant to a discussion between court and counsel for the State and the defendant, all agreed that the sick juror should be excused and that the trial should proceed with the seven remaining jurors. It is the defendant's contention that in a trial by jury, the jury must consist of eight persons; and that this could not be waived even by his own agreement thereto, based upon these provisions of law:

Sec. 10, Art. I, Utah Constitution:

In courts of general jurisdiction, except in capital cases, a jury shall consist of eight jurors. * * *

and Sec. 78–46–5, U.C.A.1953:

A trial jury in capital cases shall consist of twelve jurors. A trial jury in

---

1. See State v. Smith, 55 Wash.2d 482, 348 P.2d 417 (1960); State v. Randall, 8 Ariz.App. 72, 443 P.2d 434 (1968); People v. Fleming, 166 Cal. 357, 136 P. 291 (1913).

other criminal cases and in civil cases in the district court shall consist of eight jurors; provided, that in civil cases and cases of misdemeanor the jury may consist of any number less than eight upon which the parties may agree in open court. * * *

To be considered in connection with the foregoing is the fact that Sec. 77–31–29 expressly provides for a procedure when a juror becomes ill:

> If * * * a juror becomes ill, * * * the court may order him to be discharged. In that case a new juror may be sworn and the trial begin anew, or the jury may be discharged and a new jury then or afterwards impanelled. * * *

Each of the foregoing provisions of law applies where appropriate. But they are not mandatory and absolute in all circumstances.[2] There is no question but that trial by jury is a right which an accused may claim, or may waive entirely. Sec. 77–27–2, U.C.A.1953, provides in part that:

> * * * in all cases except where a sentence of death may be imposed trial by jury may be waived by the defendant. * * *

We can see no reason in principles of law or justice to hold that a defendant can waive an entire jury but that he cannot waive a part of it, if he freely, knowingly and voluntarily indicates to the court that such is his desire.[3]

It would be difficult indeed to reconcile the position the defendant now takes with any idea of fairness. Our law very properly affords to those accused of crime numerous protections.[4] We are as anxious as anyone to see that those protections are preserved. Nevertheless, upon those who are the beneficiaries of those safeguards, and upon those who serve in the processes of justice in their defense, there should also rest the obligation of honesty and fair dealing within the system of procedure wherein they are given those protections. Consistent therewith fair play and good conscience demand that if something occurs by reason

---

2. See People v. Clark, 24 Cal.App.2d 302, 74 P.2d 1070 (1938); People v. Patterson, 169 Cal.App.2d 179, 337 P.2d 163 (1959).

3. In Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), it is stated: " * * * (W)e must reject * * * the distinction sought to be made between the effect of a complete waiver of a jury and consent to be tried by a less number than twelve, and must treat both forms of waiver as in substance amounting to the same thing. In other words, * * * a person charged with a crime punishable by imprisonment for a term of years may, consistently with constitutional provisions * * * waive trial by a jury of twelve and consent to a trial by a lesser number, or by the court without a jury."

4. As to safeguarding the rights of one accused of crime, see statement in Gallegos v. Turner, 17 Utah 2d 273, 409 P.2d 386; and that the rights and interests of the public should also be protected, see statement in State v. Seymour, 18 Utah 2d 153, 417 P.2d 655.

of which the defense believes it cannot have a fair trial, it should honestly, forthrightly and promptly so inform the court, or be deemed to have waived any objection thereto.[5]  To permit an accused to agree to proceed with seven jurors, take up the time, trouble and expense of continuing to the end of the trial; then to argue the case and submit it to a jury, for them to deliberate and arrive at a verdict, all subject to the condition that if he wins, he will go free, but if he loses he can repudiate his agreement, would allow deception and duplicity which no court of justice should be expected to countenance.  We cannot subscribe to a rule which could result in an empty and illusory proceeding and thus make a mockery of the processes of justice.

The defendant was afforded what he was entitled to: a full and fair trial by a jury, with representation by competent counsel.  When that is accomplished all presumptions favor the validity of the verdict and the judgment.  We find no error which would justify overturning them.

Affirmed.

No costs awarded.

CALLISTER, HENRIOD, TUCKETT and ELLETT, JJ., concur.

[5]  See State v. Thompson, 58 Utah 291, 199 P. 161, wherein this court affirmed that where there was a claim of misconduct concerning the jury, a new trial would not be granted if the party having knowlelge of the claimed misconduct before the verdict failed to call attention of the court thereto and ask for proper relief.