[Crim. Nos. 15654, 15655. In Bank. Nov. 16, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
BILLY J. COMPTON, Defendant and Appellant.

**COUNSEL**

Richard E. Erwin, Public Defender, and Donald G. Griffin, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Rodney Lilyquist, Jr., Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—The sole issue on this appeal is whether the trial below was barred by the constitutional prohibition against placing the defendant twice in jeopardy for the same offense. (Cal. Const., art. I, § 13.) We conclude that the plea of double jeopardy was valid pursuant to our decision in *Curry* v. *Superior Court* (1970) 2 Cal.3d 707 [87 Cal.Rptr. 361, 470 P.2d 345]; therefore the judgment must be reversed and the information dismissed.

This case was brought to trial three times. In Ventura Superior Court action No. CR 7871 defendant was charged with committing lewd and lascivious acts and related sexual offenses upon a minor. At the conclusion of the first trial the jury was unable to reach a verdict, and a mistrial was declared. The cause was consolidated for retrial with Ventura Superior Court action No. CR 7882, another pending prosecution against defendant on similar charges. In the second trial a jury was impaneled and sworn, and a full day was consumed in taking the testimony of one of the prosecuting witnesses. When the proceedings resumed after a weekend adjournment, however, the court declared a mistrial and discharged the jury for reasons which will be discussed *infra*.

Defendant promptly moved for leave to enter a plea of once in jeopardy and for dismissal of the actions on that ground, but the motions were denied. His petition for writ of prohibition was denied without opinion, and the matter went to trial for a third time. After considerable difficulty the jury returned verdicts finding defendant guilty on four of the counts charged in action No. CR 7871, but acquitting him on the remaining four counts.[1]

---

[1]In action No. CR 7882 the vote of the jurors stood at six to six on each count, and they advised the court they were hopelessly deadlocked. The court declared another mistrial as to that action, and the district attorney moved to dismiss the information on the ground that no useful purpose would be served by further prosecution of defendant.

The case is controlled by our recent decision in *Curry* v. *Superior Court* (1970) *supra,* 2 Cal.3d 707. We there reiterated (at p. 712) the settled rules that "(1) jeopardy attaches when a defendant is placed on trial in a court of competent jurisdiction, on a valid accusatory pleading, before a jury duly impaneled and sworn, and (2) a discharge of that jury without a verdict is equivalent in law to an acquittal and bars a retrial, unless the defendant consented thereto or legal necessity required it."

In the case at bar it is undisputed that jeopardy had attached at the time the court declared the second mistrial and discharged the jury; the sole remaining questions, accordingly, are legal necessity and consent.

There was no "legal necessity" within the meaning of *Curry* for the court to discharge the entire jury. The relevant facts are as follows: In a proceeding conducted outside the presence of the jury, a barber testified that during the weekend recess the alternate juror on the case, Paul Hamilton, came to his shop for a haircut. In the course of conversation Hamilton disclosed his connection with the trial in progress and told the barber that certain older women had been rejected as prospective jurors "because they would be hard to keep an open mind on a case such as this and what the people that selected the jury didn't know, that he felt the same way," and that "he didn't like to be on a case like this because it was hard to keep an open mind."[2]

At the outset it may be doubted whether this showing would have been sufficient to justify Hamilton's discharge even if he had been a regular juror rather than an alternate. ■ A juror's admission that by reason of the nature of the case it would be difficult for him to keep an open mind constitutes a basis for his disqualification upon a challenge for actual bias. (Pen. Code, § 1073; *People* v. *Harrison* (1910) 13 Cal.App. 555 [110 P. 345].) ■ In turn, belated discovery of such a ground for disqualification while the trial is in progress may amount to good cause for the court to order the juror's discharge, provided it actually renders him "unable to perform his duty." (Pen. Code, §§ 1089, 1123; *People* v. *Green* (1956) 47 Cal.2d 209, 215-216 [302 P.2d 307]; *People* v. *Abbott* (1956) 47 Cal.2d 362, 370-371 [303 P.2d 730]; *People* v. *Taylor* (1961) 189 Cal. App.2d 490, 494-495 [11 Cal.Rptr. 480]; *In re Devlin* (1956) 139 Cal. App.2d 810 [294 P.2d 466].)

In the case at bar the extrajudicial remarks of Hamilton were, as the trial court recognized, equivocal: they could have signified that he was

---

[2]It also developed that the barber's partner, who was present in the shop at the time, was defendant's brother and an acquaintance of the trial judge. Hamilton, however, apparently had no knowledge of these facts.

incapable of "acting with entire impartiality" (Pen. Code, § 1073), but they could also have meant only that he found the facts of the case distasteful and would be compelled to make a special effort to remain objective, although he was capable of doing so. Yet the trial court did not question the person most likely to know that meaning, Hamilton himself. (Cf. *People* v. *Huff* (1967) 255 Cal.App.2d 443, 447-448 [63 Cal.Rptr. 317].) Rather, the court expressly found that Hamilton's remarks did not show he "would be unable to serve," and proceeded to discharge him merely "out of an abundance of caution and in fairness to the defendant."

While the court's concern in this regard is understandable, its ruling cannot withstand scrutiny under the precise language of sections 1089 and 1123. ■ Since our decision in *People* v. *Hamilton* (1963) 60 Cal.2d 105, 124-127 [32 Cal.Rptr. 4, 383 P.2d 412], the trial court has at most a limited discretion to determine that the facts show an inability to perform the functions of a juror, and that inability must appear in the record as a demonstrable reality.[3] Here the ambiguity in Hamilton's remarks was never resolved by proof, and the court was not entitled to do so by presuming the worst. Such a presumption, however well motivated, does not furnish the "good cause" required by the governing statutes.

Secondly, in any event Hamilton was only the alternate juror. ■ A defendant is not entitled as a matter of right to have an alternate juror sit on his case: section 1089 provides that whenever in the opinion of the court the trial "is likely to be a protracted one," it may cause an entry to that effect to be made in the minutes and may call one or more alternate jurors "in its discretion." Here no such minute entry appears in the record, and the likelihood of a "protracted" trial was minimal.[4] The court found, further, that the 12 regular jurors were in apparent good health, but it erroneously believed the trial nevertheless could not continue without

---

[3]The People's reliance in this connection on *People* v. *Ham* (1970) 7 Cal.App.3d 768, 775 [86 Cal.Rptr. 906], is misplaced. *Ham* dealt with the trial court's discretion to determine when "there is no reasonable probability that the jury can agree." (Pen. Code, § 1140.) That discretion is broader than the court's discretion under sections 1089 and 1123, but it nonetheless must be exercised in accordance with established legal rules and is fully subject to appellate review. (*Paulson* v. *Superior Court* (1962) 58 Cal.2d 1, 6 [22 Cal.Rptr. 649, 372 P.2d 641].) Citing a group of civil cases, however, *Ham* declared that the court's determination under section 1140 "will not be disturbed on appeal unless there is a strong showing of a manifest miscarriage of justice and no possibility for different opinions on the facts." This language goes far beyond *Paulson*, and is disapproved.

[4]Defendant's first trial in this case consumed only three days of testimony and one day of instructions and deliberations. Admittedly the second trial would also require disposition of the consolidated action No. CR 7882, but that proceeding charged only two counts against defendant in addition to the eight charged in action No. CR 7871.

an alternate unless counsel so stipulated.[5] ■ It is true that a personal waiver or stipulation by the defendant is needed to continue a trial with 11 jurors after one is properly discharged and there is no alternate (*People v. Patterson* (1959) 169 Cal.App.2d 179, 186-187 [337 P.2d 163], and cases cited); no such stipulation, however, is required to proceed without an alternate but with a full trial jury of 12. ■ If the judge has discretion to begin a trial without an alternate juror, he has no less discretion to conclude a trial after discharging an alternate previously called.

The People do not now contend otherwise, but argue that the mistrial was proper because Hamilton's conduct might somehow have "tainted" the remaining 12 jurors. In support, the People emphasize the trial court's remark that "maybe the jurors saw Gene [defendant's barber brother] and noticed the family resemblance and they may speculate something is up," and defense counsel's suggestion that Hamilton may have inadvertently communicated his views to the other jurors.

The court did not inquire into these matters with the jurors, apparently for fear of prejudicing them against defendant. Yet the questions were collateral at best, and any risk of prejudice was so slight that it could surely have been negated by appropriate admonitions. Instead, the concerns of court and counsel never progressed beyond the stage of bare speculation. ■ As we reiterated in *Curry*, however, "In California, legal necessity for a mistrial typically arises from an inability of the jury to agree [citations] or from physical causes beyond the control of the court [citations], such as the death, illness, or absence of judge or juror [citations] or of the defendant [citations]. A mere error of law or procedure, however, does not constitute legal necessity." (2 Cal.3d at pp. 713-714.) ■ Under that test, the speculative effect of Hamilton's discharge upon the trial jury did not amount to "legal necessity" for declaring a mistrial.[6]

---

[5]Thus the court observed, "the jury seems to be all in pretty good shape. I don't notice any elderly person that would be coughing and so forth. It would seem to me that we could continue, just dismiss the alternate, if you want to stipulate to it. I will not press either one of you to stipulate to go with the remaining 12 or not go with the remaining 12. If either of you have any feeling on that, I will abide by that because I don't want to push either one of you into a situation, but if you want an alternate, I will let you have it. On the other hand, I don't think it's that urgent from a point of view of one of the jurors getting sick. I don't think I see anything that's going to make the other remaining jurors—I don't see any signs of ill health, that's what I mean to say."

[6]The same conclusion was reached by the superior court judge who heard defendant's motions for dismissal on the ground of double jeopardy: "I think it's clear from a reading of this transcript that the jury was improperly discharged. . . . The statements attributed to the alternate juror in violating the admonition of the Court were equivocal so that although there had been a violation of the Court's admonition by an alternate juror, that that violation would have been sufficient to have supported a mistrial is not clear at all for the reason that it was an alternate, number one; that

Turning to the issue of consent, we observe that at no time in these proceedings did defendant, in person or through counsel, expressly consent to the granting of the mistrial or the discharge of the jury. The People maintain that defendant impliedly gave such consent, but the record offers no support to that contention.

We recognized in *Curry* (at p. 713 of 2 Cal.3d) that "affirmative conduct by the defendant may constitute a waiver if it clearly evidences consent [citations], and such a waiver will a fortiori be implied when the defendant actually initiates or joins in a motion for mistrial [citation]." Here, however, counsel for defendant merely called Hamilton's conduct to the court's attention, and requested the court to "question Mr. Hamilton regarding his conversation with various people outside this court concerning this case." When the court asked counsel if he was moving for a mistrial, counsel squarely denied that was his purpose: "I don't have any motion. I simply want to advise the Court of what has happened." The court then inquired whether Hamilton's remarks were improper or innocent, and counsel again replied: "Well, your Honor, I am a partisan. My view of the thing isn't necessarily an objective or intelligent view. All I want to do is apprise the Court of what has happened."

■ The circumstance that it is defense counsel who initiates the court's inquiry into a matter which ultimately results in an order of mistrial does not ipso facto transform counsel's expression of concern into an implied consent to such drastic ruling. Thus in *People* v. *Valenti* (1957) 49 Cal.2d 199 [316 P.2d 633], defense counsel requested the court to interrupt the trial to inquire into the legality of the arrest and search of the defendant; we held erroneous the court's subsequent dismissal of the information and discharge of the jury, and declared that a retrial was barred by the double jeopardy clause. In *Cardenas* v. *Superior Court* (1961) 56 Cal.2d 273 [14 Cal.Rptr. 657, 363 P.2d 889, 100 A.L.R.2d 371], defense counsel actually moved for a mistrial because of a question asked of his client on cross-examination, then requested unsuccessfully to withdraw his motion; we held that a subsequent order of mistrial was made without the defendant's consent, and hence that a retrial would place him in double jeopardy. Finally, in *Curry* defense counsel advised the court that certain testimony of the prosecuting witness was hearsay as to his clients and "extremely prejudicial," and requested a cautionary instruction to the jury; we held that the mistrial thereafter ordered was not consented to by the defendants because their "simple request for an admonition on an evidentiary matter

the statements by the alternate were equivocal, number two; and by the fact that there was absolutely *no evidence* before the Court of any misconduct by the trial jury itself. So one thing is clear and that is that the discharge of that jury was precipitously made, and I don't believe was made with justification."

cannot be magnified into a waiver of their constitutional protection against double jeopardy." (2 Cal.3d at p. 713.)

 Applying this rule to the case at bar, we conclude that a waiver of defendant's constitutional protection against double jeopardy cannot be inferred from his counsel's request that the court inquire into a reported instance of misconduct on the part of the alternate juror.[7]

Finally, the People urge that such consent should be implied from defendant's failure to object to the proposed order of mistrial. After discussing why a mistrial seemed "the only course left," the court asked both counsel, "do any of you have any strong objections to what I am going to do? Let me know now, but I think that is the only recourse." The deputy district attorney gave the guarded answer, "No comment, your Honor." The court then asked defense counsel if he had "anything further," and the latter replied simply, "No, your Honor."

 The effect of a failure to object is no longer an open question: we declared in *Curry* (at p. 713 of 2 Cal.3d) that "When a trial court proposes to discharge a jury without legal necessity therefor, the defendant is under no duty to object in order to claim the protection of the constitutional guarantee, and his mere silence in the face of an ensuing discharge cannot be deemed a waiver." No grounds are shown to distinguish the present case from *Curry* on this point, and no consent to a mistrial may therefore be implied from defendant's failure to voice an objection.

 Inasmuch as defendant was thus placed once in jeopardy at his second trial, we are required not only to reverse the judgment in his third trial but also to prohibit a fourth trial on these same charges.

The judgment is reversed with directions to the trial court to dismiss the information in Ventura Superior Court action No. CR 7871.

Wright, C. J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

**McCOMB, J.**—I dissent. I agree with the trial judge that defendant im-

---

[7]The People emphasize that defense counsel thereafter told the court he felt Hamilton's remarks were "harmful" and his conduct "undermines one of the very basic premises of the jury system. This juror is trifling with my client's natural life." When fairly read in context, however, this language was no more than an expression of counsel's justifiable dismay at the possibility that the juror in question might have violated his oath and thereby exposed himself to contempt sanctions and the defendant to an unfair trial.

pliedly consented to the granting of a mistrial and was therefore not twice placed in jeopardy for the same offense. (See *People* v. *Compton* (Cal.App.) [94 Cal.Rptr. 371].)