Filed 5/21/21  P. v. Garner CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B299609 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA453809) |
| v. | |
| DEAURELL GARNER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Leslie A. Swain, Judge.  Affirmed.

Berangere Allen-Blaine, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Deaurell Garner of first degree murder and other offenses, and found true several firearm, gang, and recidivism allegations. The trial court sentenced him to 75 years to life in prison. Garner contends the trial court committed several evidentiary and procedural errors at both the preliminary hearing and trial. We affirm.

## BACKGROUND

Garner was a member of the Rolling 40's Crips gang. On August 31, 2016, he drove his Jeep to an intersection of 54th Street and 2nd Avenue in Los Angeles, territory claimed by the rival gang VNG, where he shot and killed Keenan Hogue. Surveillance videos of the area of the shooting caught the Jeep's license plate number.

At trial, Los Angeles Police Detective Refugio Garza, the investigating officer, testified Garner was a Rolling 40's gang member, and his Jeep was found at the residence of another Rolling 40's member. Garza also testified that he had information extracted from Garner's iPhone that placed him at the scene of the shooting. We will describe further procedural and evidentiary facts as they become pertinent to the discussion below.

Garner presented a mistaken identity defense, essentially contending the police investigation was flawed.

The jury convicted Garner of first degree murder (Pen. Code, § 187, subd. (a)),[1] shooting from a motor vehicle (§ 26100, subd. (c)), and being a convicted felon in possession of a firearm

---

[1] Undesignated statutory references will be to the Penal Code.

(§ 29800, subd. (a)(1)), and found gang allegations true as to all three counts (§ 186.22, subd. (b)(1)) and gun allegations true as to the first two counts (§ 12022.53, subd. (d)).  Garner admitted that he had a prior serious felony conviction under the "Three Strikes" law and section 667, subdivision (a)(1).

The trial court sentenced Garner to 75 years to life, comprising a term of 25 years to life for the murder, which was doubled as a result of Garner's prior "strike" offense, plus 25 years to life for the firearm enhancement.  The court imposed a concurrent two-year sentence on the possession count and imposed but stayed a sentence for shooting from a motor vehicle.

## DISCUSSION

Garner contends the trial court made two evidentiary errors at the preliminary hearing and 11 evidentiary and procedural errors at trial.

### A.     Preliminary Hearing

At the preliminary hearing, evidence that Garner does not challenge on appeal indicated he was a Rolling 40's gang member, his Jeep was used in the shooting, and his phone had been situated near the scene at the time of the shooting.

In addition to this evidence, Los Angeles Police Officer Tyler Booth testified over a defense *Miranda*[2] objection that he once conducted a traffic stop of Garner while he was driving the Jeep used in the shooting.  During the stop, Garner, who had the numbers "4" and "0" tattooed on his left and right triceps, admitted he "used to belong to the Rolling 40's."

Furthermore, Detective Garza testified that Garner was placed in a jail cell after his arrest, and his three-hour

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

3

conversation with a confidential informant was surreptitiously recorded. During the conversation, Garza testified, Garner stated he allowed no one else to drive his Jeep, he had disposed of the murder weapon, and he knew about surveillance cameras near the murder scene. When defense counsel asked for permission to play the recording of the conversation, the court ruled that the defense could not play the recording in its entirety, and could play none without a transcript.

### 1.    Gang Admission

Garner argues that admission of Officer Booth's testimony about his gang admission violated his *Miranda* rights. We disagree.

"The Fourteenth Amendment to the federal Constitution and article I, section 15, of the state Constitution bar the prosecution from using a defendant's involuntary confession." (*People v. Massie* (1998) 19 Cal.4th 550, 576.)

After a criminal trial and conviction, "irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination." (*Avitia v. Superior Court* (2018) 6 Cal.5th 486, 496.) A court lacks fundamental jurisdiction when it has no power to hear or determine the case or has no authority over the subject matter or the parties. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 139-140.) A nonfundamental error at the preliminary hearing stage requires reversal only if the error impacted the trial. (*People v. Millwee* (1998) 18 Cal.4th 96, 121-

4

122 [no prejudice from ineffective assistance of counsel at preliminary hearing that had no impact on the trial].)

Here, the only issue decided at the preliminary hearing was whether sufficient evidence existed to hold Garner to answer on the charged crimes.

The record does not indicate, and Garner does not claim, that Officer Booth's testimony about Garner's gang admission so vitiated the evidence as to render it insufficient to hold him over for trial. (Nothing in the record indicates Garner was precluded from presenting a *Miranda* claim at trial.) Beyond any reasonable doubt, therefore, Booth's testimony about Garner's gang admission could not have affected the court's decision to hold him over. (See *Chapman v. California* (1967) 386 U.S. 18, 26 [standard for error of constitutional magnitude].)

Garner argues without explanation that admission of Officer Booth's testimony about Garner's gang admission "allowed the matter to proceed to trial based on [this] evidence." We disagree. Booth's testimony went only to the limited issue of Garner's gang membership. Nothing in the record indicates Garner would not have been held over for trial on murder charges absent evidence of his gang membership. In any event, his gang membership was established by independent evidence, for example Booth's observation of Garner's gang tattoos.

## 2. Recorded Conversation

Garner argues that the trial court abused its discretion by refusing to allow the defense to play the entire jailhouse recording. He does not assert that the error prejudiced him.

This argument fails for the same reason as the prior one. Garner makes no effort to identify any excluded statement that would have corrected any misleading impression so as to result in

5

him not being held over for trial, and makes no argument that he was prejudiced at trial by the court's refusal to hear the entire recording at the preliminary hearing.

## B.    Destruction of Garner's Jeep

A witness testified that the shots that killed Hogue were fired from the open driver's window of a dark colored Jeep. Surveillance video of the crime showed it was Garner's Jeep. Police impounded the vehicle in September 2016, but notices to the registered owner produced no response because neither Garner nor the person from whom he purchased it had executed a change of ownership with the California Department of Motor Vehicles.  The Jeep was destroyed as a matter of procedure on January 4, 2017.  Garner was not arrested until January 19, 2017.

Two other facts about the Jeep are pertinent:  (1) Three police officers testified that the driver's side window was closed and inoperable; and (2) there were holes in the Jeep that could have been created by gunshots.

Garner moved to exclude any evidence about the Jeep because it had been destroyed.  The trial court denied the motion.

Garner argues the court erroneously denied his motion to exclude all prosecution evidence about the Jeep because the vehicle constituted material, exculpatory evidence, which the police destroyed in bad faith.  We disagree.

The state must preserve evidence "expected to play a significant role in the suspect's defense.  To meet this standard . . . [citation], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably

available means." (*California v. Trombetta* (1984) 467 U.S. 479, 488-489, fn. omitted (*Trombetta*).) In *Arizona v. Youngblood* (1988) 488 U.S. 51, 57-58 (*Youngblood*), the Court clarified that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."

We apply a two-step inquiry to determine whether the state's failure to preserve evidence violated a defendant's right to due process: "First, did the destroyed evidence meet either the 'exculpatory value that was apparent' or the 'potentially useful' standard for materiality under *Trombetta* or *Youngblood*, respectively? (See *Youngblood*, *supra*, 488 U.S. at p. 58; *Trombetta*, *supra*, 467 U.S. at pp. 488-489.) Second, if the evidence qualified as 'potentially useful' under *Youngblood* but did not meet the *Trombetta* standard, was the failure to retain it in bad faith? (*Youngblood*, *supra*, 488 U.S. at p. 58.)" (*People v. Alvarez* (2014) 229 Cal.App.4th 761, 774.)

Here, nothing indicates the Jeep constituted material exculpatory or even potentially useful evidence. Garner argues in his opening brief that the inoperability of the Jeep's driver's window was exculpatory because a witness described the shooting as coming from an open driver's window. But that evidence was immaterial because three police officers also testified that Garner's Jeep's window was closed and inoperable.

Garner argues in his reply brief that the holes in the Jeep could have originated near the time of the shooting, which might indicate that the same gunfire that killed Hogue also impacted the Jeep, establishing it was not the shooter's vehicle. This is pure speculation. *Trombetta* and *Youngblood* " 'do[] not require the disclosure of information that is of mere speculative value.' "

(See *People v. Williams* (2013) 58 Cal.4th 197, 259 [applying a similar standard to evidence the state possesses but fails to disclose].)

## C. Evidentiary Sanction for Late Discovery

After Garner was arrested, police possessed his iPhones but could not access the information in them because they did not have Garner's passwords. In February 2018, the prosecutor learned that Cellebrite, a digital forensics company, had a new ability to extract information from iPhones without a password. The prosecutor sent the phones to Cellebrite and received the information it extracted from them. One week later, on April 25, 2018, two weeks before the originally scheduled trial date, the prosecutor forwarded the information to defense counsel.

Garner moved to exclude any information obtained from his iPhones as a discovery sanction for the belated disclosure. The trial court found the nondisclosure was not in bad faith, and therefore denied the motion, but granted Garner's request for a continuance of trial until August 2018. Trial ultimately began on March 12, 2019.

Garner argues the court erred by denying his defense motion to exclude iPhone evidence. We disagree.

Section 1054.1 mandates that a prosecutor disclose relevant evidence to a criminal defendant at least 30 days before trial, or immediately if discovered or obtained within 30 days of trial. "Upon a showing both that the defense complied with the informal discovery procedures provided by the statute, and that the prosecutor has not complied with section 1054.1, a trial court 'may make any order necessary to enforce the provisions' of the statute, 'including, but not limited to, immediate disclosure, . . . continuance of the matter, or any other lawful order.' . . . A

violation of section 1054.1 is subject to the harmless-error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836, 299 P.2d 243." (*People v. Verdugo* (2010) 50 Cal.4th 263, 280.) We review "a trial court's ruling on matters regarding discovery under an abuse of discretion standard." (*People v. Ayala* (2000) 23 Cal.4th 225, 299.)

Here, we need not decide whether the iPhone evidence was relevant nor whether the prosecutor improperly delayed in disclosing it, because any error in denying Garner's motion to exclude the evidence was undoubtedly harmless: Garner received the disclosure 10 months before trial.

## D.    Prohibition of Ex-Felons Serving on a Jury

At the time of trial, Code of Civil Procedure section 203, subdivision (a)(5) prohibited convicted felons from serving on a jury. Garner moved to have this action dismissed on the ground that the prohibition unconstitutionally deprived him of the right to a trial by a jury drawn from a fair cross-section of the community. The trial court denied the motion.

Garner argues the trial court violated his constitutional rights by denying the motion. However, we are bound by Supreme Court precedent squarely rejecting the argument that prohibiting a convicted felon from serving on a jury is unconstitutional. (*People v. Karis* (1988) 46 Cal.3d 612, 632-634.)

## E.    Search Warrants

A search warrant apparently issued on January 17, 2017, supported by an affidavit by Detective Garza in which he stated a witness reported that the shot that killed Hogue was fired from an SUV or Jeep by a light-skinned Black man. With no explanation of the circumstances surrounding the warrant, nor description of the area to be searched, nor citation to the record,

9

Garner argues the warrant lacked probable cause because Garza's affidavit was too general, and the trial court erred in denying his motion to have the warrant quashed.

Another search warrant issued in 2019, seeking information from Garner's iPhones that had already been obtained by a search pursuant to warrant. The prosecutor represented that the second search was necessary because the police expert overseeing the first was unavailable to testify. Garner moved to quash the warrant on the ground that nothing indicated the information sought the second time was the same as that obtained the first time. Finding that the iPhones had never left the police chain of custody, the court found no reason to believe the second extraction would differ from the first. It therefore denied the motion.

Citing no pertinent authority and with only perfunctory argument, Garner claims the court erred in denying his second motion to quash.

We deem both arguments forfeited.

" 'A reviewing court will consider the totality of the circumstances to determine whether the information contained in an affidavit supporting the application for a warrant establishes a fair probability that a place contained contraband or evidence of a crime.' " (*People v. Lim* (2000) 85 Cal.App.4th 1289, 1296.) Reviewing courts will not consider matters that are "perfunctorily asserted without argument or authorities in support." (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214, fn. 11.)

Because Garner provides no circumstances surrounding the first warrant, failing even to describe the object of the search, we have insufficient information to evaluate the merits of his claim that the trial court erred in denying his motion to quash it.

10

Because Garner gives no explanation how the content of his iPhones might have changed over time, or why any change would matter, we have no ground upon which to ascertain whether the warrant was insufficient.

## F. Evidence of Other Vehicles

After a detective testified that the shooter's vehicle depicted in the surveillance video could have been a Sports Utility Vehicle rather than a Jeep, defense counsel attempted during cross-examination to make use of a photographic array depicting SUVs rather than Jeeps. The trial court found that use of the display would be more prejudicial than probative, and additionally that no foundation had been established as to what vehicles were depicted. After defense counsel offered to secure a witness to establish foundation, the court stated that it would decide the foundation issue later. The matter was never revisited.

Garner argues the trial court prejudicially erred in excluding defense counsel's photo array. We conclude the issue has not been preserved for appeal.

"It is well settled that demonstrative evidence is admissible for the purpose of illustrating and clarifying a witness' testimony." (*People v. Ham* (1970) 7 Cal.App.3d 768, 780, disapproved on another ground in *People v. Compton* (1971) 6 Cal.3d 55, 60.) Prior to the use of a visual aid, a witness must offer foundational testimony as to the representative accuracy and illustrative value of the visual aid, and it must be established that the aid was substantially similar to that which it seeks to illustrate. (*Ham*, at p. 780.)

Here, defense counsel at first offered no foundation for the representative accuracy or illustrative value of his visual aid, but

11

was invited to do so by the court. He ultimately declined to do so. When a trial court defers ruling on a motion to admit foundationless evidence, the defendant must renew the motion to preserve the issue for review. (See *People v. Ramos* (1997) 15 Cal.4th 1133, 1171.) Failure to do so "depriv[es] the trial court of the opportunity to correct potential error." (*Ibid*.) Garner therefore failed to preserve this issue for appeal.

## G.    The Prosecution's Refusal to Stipulate

The prosecution planned to link Garner to a cell phone that was in the area of the shooting by having his probation officer testify about Garner's cell phone number. Garner offered to stipulate to his phone number to prevent the jury from discovering he was on probation, but the prosecution declined the offer.

The prosecution also planned to establish that Hogue died of a gunshot wound by introducing two autopsy photographs. Defense counsel offered to stipulate that Hogue died of a gunshot wound, but the prosecution again declined.

Garner thereafter moved to exclude the probation officer's testimony and autopsy photos on the ground that, given his willingness to stipulate, they would have unduly prejudicial effect. The court denied the motions.

Garner argues that given his willingness to stipulate, the probation officer's testimony and autopsy photos had no probative value. We disagree.

Relevant evidence should be excluded if the trial court, in its discretion, determines that its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice. (Evid. Code, § 352.) In this context, unduly prejudicial evidence is evidence that would

cause the jury to "prejudge" a person on the basis of extraneous factors. (*People v. Zapien* (1993) 4 Cal.4th 929, 958.) We review the trial court's decision on whether evidence is unduly prejudicial for abuse of discretion. (*People v. Avitia* (2005) 127 Cal.App.4th 185, 193.)

Here, given that the prosecution *refused* to stipulate to Garner's telephone number or Hogue's cause of death, the probity of the autopsy photos and probation officer's testimony about Garner's cell phone number were manifest.

"Neither the prosecutor nor the trial court [is] legally obligated to accept [a] . . . stipulation" (*People v. Rogers* (2013) 57 Cal.4th 296, 329), because to require a prosecutor to accept a stipulation would permit a defendant to "stipulate . . . his way out of the full evidentiary force of the case as the Government chooses to present it" (*id.* at p. 330). Therefore, a defense offer to stipulate is of no consequence in an analysis under Evidence Code section 352. (*People v. Carter* (2005) 36 Cal.4th 1114, 1169-1170.)

## H.    Motion for Mistrial

At trial, Detective Garza testified that the Jeep driven by the suspected shooter was found at the address of Jason Edwards, a known Rolling 40's member. In violation of the court's order to limit his testimony, Detective Garza then volunteered that Garner was an associate of Edwards. Defense counsel objected to the testimony and moved for a mistrial, which the trial court denied because there had already been a "plethora of testimony" that Garner was an active member of the Rolling 40's gang.

13

Garner argues the court erred in denying his motion for mistrial because Garza's testimony suggested Garner had a "propensity for criminality." We disagree.

A mistrial must be granted when prejudice caused by improperly admitted evidence irreparably damages a defendant's chance of receiving a fair trial and cannot be cured by an admonition to the jury. (*People v. Edwards* (2013) 57 Cal.4th 658, 703.) Improperly volunteered information will necessitate a mistrial only when the testimony cannot be cured by an admonition. (*People v. Franklin* (2016) 248 Cal.App.4th 938, 955.) "The California Supreme Court has consistently found vague and fleeting references to a defendant's past criminality to be curable by appropriate admonition to the jury." (*Ibid.*)

A trial court has considerable discretion in determining whether improper testimony causes incurable prejudice. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 986-987.) We review the denial of a mistrial motion for an abuse of discretion. (*People v. Elliott* (2012) 53 Cal.4th 535, 575.)

Here, the trial court could reasonably find that no incurable prejudice arose from Detective Garza volunteering that Garner and Edwards were associates. Evidence established that both were Rolling 40's members, and the strong inference that they therefore knew each other was given no greater weight by Garza confirming it. Such confirmation suggested nothing about Garner's propensity for criminality.

## I. Detective Garza

While cross-examining Detective Garza, defense counsel asked whether he investigated the possibility that another gang also had a reason to commit a shooting in VNG territory. The trial court sustained a prosecution objection raised under

14

Evidence Code section 352, and denied the defense request to ask whether Garza had investigated other groups or people for the shooting.

Garner argues the court prejudicially erred in excluding such testimony because it would have impeached Garza's credibility by showing that "the police rushed to judgment" regarding Garner.  We disagree.  (See *People v. Page* (2008) 44 Cal.4th 1, 37 ["The possibility the police may have chosen not to follow up more thoroughly on all leads does not impeach the evidence against defendant"].)

**J.      Motion for New Trial and Cumulative Error**

After trial, Garner moved for a new trial under section 1181.6, arguing that issues surrounding the destruction of the Jeep, the second cell phone extraction, and the rule excluding felons from jury service resulted in a miscarriage of justice.  The court denied the motion.

Garner argues that for "reasons discussed" above, the trial court erred.  He also argues that the cumulation of errors described above necessitates reversal.  Having concluded that none of Garner's arguments have merit, we reject also his arguments concerning new trial and cumulative error.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED

                                        CHANEY, J.

We concur:


BENDIX, Acting P. J.


FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.