[Crim. No. 28209. Second Dist.. Div. Two. June 23, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE MANRIQUEZ, Defendant and Appellant.

**COUNSEL**

Paul Arthur Turner, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline and Marc E. Turchin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ROTH, P. J.**—Following a jury trial appellant, George Manriquez, was found guilty of first degree robbery. (Pen. Code, § 211a.) This appeal is from the judgment.

On May 13, 1975, at 11:50 p.m., the victim, Enrique Cervantes, was in a telephone booth in a Safeway parking lot in the area of 25th and Pasadena Avenue in the City of Los Angeles. Completing the phone call, he walked to his car. Appellant and a juvenile approached Cervantes with a gun drawn, demanded his money, and threatened to kill him if he refused. Cervantes gave appellant a $5 bill and three ones (all he had) whereupon he was ordered into the back seat of his own car.

Concurrently, a police vehicle approached and one of the officers in the vehicle observed the Cervantes' vehicle in the empty parking lot and caused the police vehicle to turn into the parking lot. As the police vehicle approached the Cervantes' vehicle the officers noticed Cervantes in the rear of the car making gestures behind his head simulating a gun. The police car was stopped opposite the Cervantes' vehicle. The officers alighted and asked the three passengers in the Cervantes' car to get out. The victim then told the officers he had been robbed. Appellant and the juvenile were arrested. After the arrest, one of the officers checked the inside of the Cervantes' car and found a gun underneath the seat occupied by appellant, and also found $8 consisting of a $5 bill and three ones.

After both sides had rested and the court had recessed for the weekend, one of the women jurors was the victim of an attempted robbery at gun-point. The juror made no mention of her weekend experience. On the Monday morning after recess the court met and instructed the jury. The jury began deliberating on Monday afternoon, continued to deliberate on Tuesday morning, and on Tuesday afternoon, at approximately 2:30 p.m., court and counsel were for the first time

made aware of the victimized juror's weekend experience. At 2:30 p.m., the following occurred.

"THE COURT: . . . Here is what the Court intends to do. I intend to bring her out, ask her if she has discussed this with the other jurors; if she says no, then I will ask her whether this will affect her verdict or can she decide the case strictly on the evidence.

"If she says no, she can't—the other thing is jeopardy has attached. You have to be willing to stipulate to a mistrial in the case.

"If she says she discussed it with all the rest of the 11, then I will bring them all out and ask them the same questions. That's the way I propose to do it."

Both sides agreed that the court's plan seemed fair but when the court asked if both sides would stipulate to a mistrial, defense counsel stated he would, but the prosecutor declined to do so.

The victimized juror was then called in and the following ensued:

"[THE COURT:] Number one, have you discussed this with the other jurors?

"THE JUROR: I mentioned it yesterday when we went to lunch with the ladies.

"THE COURT: I didn't hear you.

"THE JUROR: I mentioned it yesterday when I went to lunch with the ladies.

"THE COURT: That was before the case was submitted to you?

"THE JUROR: Before what?

"THE COURT: Before you received the case. The case was given to them yesterday afternoon, right?

"THE JUROR: It was when we were at lunch.

"THE COURT: Now, have you discussed this with them now today?

"THE JUROR: One of the ladies brought it up.

"THE COURT: Now, do all the rest of the 11 jurors know about it?

"THE JUROR: Yes.

"THE COURT: Now, listen to my next question; do you feel this experience would affect your decision in the case?

"THE JUROR: No, not really.

"THE COURT: You can decide the case strictly on the evidence presented here?

"THE JUROR: Yes.

"THE COURT: I will allow one or two questions; anybody want to ask anything?"

A conference was held between counsel and the court apparently to suggest further questions to the court. Defense counsel suggested to the court specific questions such as why had she waited so long to notify the court, had she reported her experience to the police or the security guard at the store where the incident occurred, and had her assailant been arrested, etc. He then argued that the mere happening of the incident had to prejudice the mind of the victimized juror and moved for mistrial. The court stated it had covered the area and did not act on the motion.

The court summoned the other 11 jurors and inquired of them en masse if they could base their decision on the evidence before them and divorce from their consideration of the evidence the attempted robbery on their fellow juror. Apparently the 11 jurors answered en masse by nodding their heads in the affirmative since the court made a finding that all 12 had said that it would not affect their decision. The jury then returned for further deliberation.

Counsel for appellant again moved for mistrial which was denied.

At 3:45 p.m., the jury returned to the courtroom with a verdict of guilty.

Appellant initially contends that under the facts he was denied his fundamental right to a fair trial. (*Sheppard* v. *Maxwell* (1966) 384 U.S. 333 [16 L.Ed.2d 600, 86 S.Ct. 1507]; *People* v. *Ranney* (1931) 213 Cal. 70, 75 [1 P.2d 423]; cf. *Maine* v. *Superior Court* (1968) 68 Cal.2d 375 [66 Cal.Rptr. 724, 438 P.2d 372]; Pen. Code, § 1033.)

■ Although no case on similar facts has been cited to us, and our research discloses none, we feel that the procedure employed by the trial court to determine whether "good cause" existed for the discharge of the victimized juror was adequate. (See Pen. Code, §§ 1089, 1120, 1123.)

Although brief, the interrogation by the court of the one juror and its en masse interrogation of the other 11 did show that each and every member of the jury was privy to the experience of the victimized juror.

This factor does not indicate that appellant was prejudiced in any way since the record shows the jury had been deliberating part of one afternoon, all of the next morning, and a part of the next afternoon with knowledge of the fact that one of its members had been the victim of an attempted armed robbery. By the time the court first became aware of the attempted robbery, all of the deliberating jurors knew of the incident. When interrogated by the court, all of the jurors indicated the experience would have no effect on them and they could be fair and impartial. Had the jurors been biased against appellant, they could have returned a guilty verdict immediately. Instead they proceeded to deliberate. In light of the facts as set forth above, and in light of the fact that the jury still had not returned a verdict, we feel the court was entitled to believe the jurors when they stated the experience would not affect them.

If the court had determined there was good cause for the discharge of any of the jurors, and had appellant resisted the discharge and had the court then reversed its ruling, appellant could not have complained. (*People* v. *Mandell* (1942) 48 Cal.App.2d 806 [120 P.2d 921].) If on the other hand the court had persisted in its determination to discharge such juror, an appellate court would probably have upheld the court's action but such action had it been taken merely indicates that the situation called for the exercise of the court's discretion. (*In re Devlin* (1956) 139 Cal.App.2d 810 [294 P.2d 466]; *People* v. *Taylor* (1961) 189 Cal.App.2d 490 [11 Cal.Rptr. 480]; *People* v. *Lanigan* (1943) 22 Cal.2d 569 [140 P.2d 24, 148 A.L.R. 176].) The trial was in progress. The trial judge exercised the only means to determine if the victimized juror, or any other juror,

was unable to perform his or her duty under section 1123 of the Penal Code. (See *People v. Davis* (1972) 27 Cal.App.3d 115 [103 Cal.Rptr. 494].)

A hearing under sections 1123 and 1089 should be summary in nature and scope. (*People v. Tinnin* (1934) 136 Cal.App. 301, 318-319 [28 P.2d 951]; *People v. Abbott* (1956) 47 Cal.2d 362, 371 [303 P.2d 730].) The hearing, though not a full-scale adversary hearing nonetheless should be complete enough to determine "good cause." (Cf. *People v. Huff* (1967) 255 Cal.App.2d 443, 448 [63 Cal.Rptr. 317]; *Mitchell v. Superior Court* (1962) 207 Cal.App.2d 643, 649 [24 Cal.Rptr. 671].) The court's actions weighed in light of the factual background of the jury's deliberations were proper and there was no error in its determination that there was not good cause for the excusing of any of the jurors.

Appellant next asserts the court erred when it permitted a "blanket assertion of the privilege against self-incrimination" by the juvenile codefendant. In *People v. Chandler* (1971) 17 Cal.App.3d 798, 805 [95 Cal.Rptr. 146], this court indicated that: "A witness has no right to simply refuse to testify generally either before or after being sworn, the privilege must be asserted as to each question."

At bench the court permitted the juvenile codefendant to assert the privilege generally in the absence of a specific question and thereby committed error. However, appellant made no offer of proof as to what the testimony of the witness would have been, and therefore the error was nonprejudicial. (*People v. Bartges* (1954) 126 Cal.App.2d 763, 773-774 [273 P.2d 49]; *People v. Sierra* (1953) 117 Cal.App.2d 649, 651 [256 P.2d 577].)

Appellant next argues the trial court committed error in failing to order the prosecution to grant immunity to the juvenile codefendant, or in the alternative, granting immunity to the codefendant on its own motion. "Making a grant of immunity subject to a request therefor by the district attorney of the county or the Attorney General does not invade judicial prerogatives, since the decision to seek immunity is an integral part of the *charging* process, and it is the prosecuting attorneys who are to decide what, if any, crime is to be charged. . . ." (*In re Weber* (1974) 11 Cal.3d 703, 720 [114 Cal.Rptr. 429, 523 P.2d 229].)

Thus there is no violation of the separation of powers doctrine, and the court had no power to order the prosecution to grant immunity or in the

alternative to grant immunity of its own motion. Appellant's second assertion that the failure of the prosecutor to grant immunity amounts to a deliberate suppression of the evidence within the meaning of *People v. Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], falls of its own weight since there is no showing that there was any suppression at bench.

█ ˙Appellant's final contention is that the trial court erred in refusing to allow evidence regarding his injuries which resulted when he was arrested. This evidence which went to the issue of police brutality at the time he was arrested was of speculative relevance to the charge of robbery. There was no abuse of discretion in disallowing the introduction of this evidence. (Evid. Code, § 352; *People v. Jackson* (1974) 37 Cal.App.3d 496, 499 [112 Cal.Rptr. 411].)

The judgment is affirmed.

Fleming, J., and Compton, J., concurred.

A petition for a rehearing was denied July 6, 1976, and appellant's petition for a hearing by the Supreme Court was denied August 18, 1976.