[Crim. No. 33752. Second Dist., Div. One. Dec. 15, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
LESLIE VAN HOUTEN, Defendant and Appellant.

[Crim. No. 37644. Second Dist., Div. One. Dec. 15, 1980.]

In re LESLIE VAN HOUTEN on Habeas Corpus.

**COUNSEL**

Paul J. Fitzgerald, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BAFFA, J.\***—

I

Leslie Van Houten was convicted in 1971 of two counts of murder and one count of conspiracy to commit murder, along with codefendants, Charles Manson, Patricia Krenwinkel and Susan Atkins. After the penalty phase, the same jury imposed death sentences upon all defendants. The resulting judgment was appealed directly to the Supreme Court, and while the case was pending, the Supreme Court decided *People* v. *Anderson* (1972) 6 Cal.3d.628 [100 Cal.Rptr. 152, 493 P.2d 880], invalidating the death penalty. The appeals were then transferred to the Court of Appeal, Second Appellate District, Division One. In that case, *People* v. *Manson* (1976) 61 Cal.App.3d 102 [132 Cal.Rptr. 265], the Court of Appeal reversed the judgment of conviction of appellant Van Houten and affirmed the judgments as to the other defendants.

Pursuant to the remittitur filed on December 10, 1976, reversing the judgment of conviction, the matter was retried by a jury. The jury was hopelessly deadlocked and a mistrial was declared.

---

\*Assigned by the Chairperson of the Judicial Council.

Appellant was retried by a jury. Appellant was found guilty as charged of two counts of first degree murder arising out of the murder of Rosemary and Leno La Bianca, and guilty of conspiracy to commit murder in the first degree. Appellant was ordered imprisoned in the state prison for the term of life, with each of said counts to run concurrently with each other. Appellant was given credit for eight years and twenty days in custody. This appeal is from the judgment.

Appellant has also filed a petition for writ of habeas corpus, during the pendency of this appeal, and said petition will be ruled upon along with her appeal.

## II

Appellant, Leslie Van Houten, was member of a group called the Manson Family who was responsible for two sets of homicides in August 1969. Manson Family members, Susan Atkins, Patricia Krenwinkel, Linda Kasabian and Tex Watson, under orders of family leader Charles Manson, killed Sharon Tate Polanski, Voitcek Frykowski, Abigail Folger, Jay Sebring and Steven Parent on the night of August 9, 1969. The next night, August 10, Manson Family members Tex Watson, Patricia Krenwinkel and Leslie Van Houten, at the order of Manson, killed Leno and Rosemary La Bianca. Those homicides became known respectively as the "Tate Killings" and the "La Bianca Killings." Both sets of killings were instigated by Charles Manson to trigger off his so-called "Helter Skelter" revolution. The killings were grotesque, gruesome, horrendous affairs, involving in most instances, a great deal of cutting and hacking as per the instruction of Charles Manson.

At the trial, appellant admitted her full participation in the La Bianca homicides. It was conceded that she did not participate in the Tate Killings. The defense was diminished capacity based on mental illness. The mental illness was allegedly induced by family leader, Charles Manson, the peculiar nature of the Manson Family communal organization, and the chronic, prolonged use of hallucinagenic drugs.

Appellant raises three basic issues on appeal, and makes the following contentions:

1. The trial court erred in discharging a juror without good cause and replacing the juror with an alternate juror, thereby depriving appellant of her right to a jury trial.

2. The trial court committed prejudicial error in admitting evidence and details of crimes committed pursuant to a conspiracy before appellant joined the conspiracy.

3. The admission, by the trial court, into evidence of numerous grotesque, gruesome photographs of the victims, constituted prejudicial error.

In her petition for writ of habeas corpus, petitioner contends her trial counsel, Maxwell S. Keith, was incompetent and ineffective regarding certain aspects of the trial, and appropriate relief is requested predicated upon these contentions.

### III

■ The appellant argues that the trial court committed prejudicial error in dismissing one of the jurors during the trial. This particular juror, Sandra Driscoll, on the third day of trial evidence taking, had requested, in a conversation with the court clerk, that she be excused from jury duty. The juror had appeared back at the afternoon session of court with her husband, a law student. Out of the presence of the jury, but unsworn, Mr. Driscoll told the court his wife called him at home on his lunch break and was very upset. She said she couldn't go back into the courtroom. What she had been listening to in the courtroom that morning was making her sick. The preceding day, after court, after looking at grisly pictures in the courtroom, she was very upset. She also stated to him that the coroner's testimony had been so graphic, she was having trouble keeping her composure and was trying to think of other things.

The court conducted a hearing in chambers with the juror, advising her that she was still under oath "just like you were earlier" and a series of questions were asked by the court and all counsel inquiring into the situation. The record is thorough and complete in this area and the trial judge is to be commended for the manner in which he handled the proceeding. Mrs. Driscoll stated: "The pictures that we had looked at and some of the things that we had been discussing are upsetting me both physically and emotionally to a point where I feel I really can't continue as a juror. [¶] This is not something that I take lightly. I realize my responsibilities, and I spent the entire lunch hour walking around thinking about it. [¶] I feel very uncomfortable having to say it, but it is really

causing me severe problems, and I feel it would be a detriment both to me and to the court for myself to continue."

The court made this direct inquiry of the juror: "Your husband said —I hate to quote your husband...he said something about how you were tending to tune out what the witnesses were saying. Is that true?"

Mrs. Driscoll responded: "This morning I did, yes. I had to force myself to do that in order to keep from getting physically ill."

Along this same train of thought, Deputy District Attorney Kay, made the following direct inquiry of the juror: "Do you think you would be unable to follow the rest of the case?"

Mrs. Driscoll responded: "Yes, that's my problem."

The court in summation, after a series of questions by the court and all counsel, and answers by the juror stated that although Mrs. Driscoll was a mature young woman in her late thirties, she was obviously unable to cope with the situation she found herself in as a trial juror in this particular case. The record indicates that the trial judge was confronted with a situation in which a trial juror, because of the photographs and the testimony, was losing her composure; was being upset to the point that she felt she really could not continue as a juror; was affected to the point that she would think of other matters rather than concentrate on the testimony therein so as not to lose her composure; was crying; was having trouble sleeping; was afraid that she might become physically ill by reason of the service as a juror and did not think that she could sit and actually follow the evidence during the rest of the trial.

In determining that good cause existed for excusing Mrs. Driscoll, the court made the following statements:

"I don't have to make a detailed record of my ruling, but I will say very briefly since we are on the record that I don't think she can participate with her full mind for the remainder of the trial.

"It is not simply the pictures, but it is the pictures and the descriptions.

"We cannot tailor admissibility of evidence to suit the sensibilities of one juror. That cannot be done.

"Simply the bare facts of the injury, even without photographs, are going to be on her mind all the way through this case.

"She prides herself, notwithstanding all of the psychological problems of the family, with being able to cope. She is a mature lady, what, late 30's? That is my guess.

". . . . . . . . . . . . . . .

"And here she has something that is bigger than herself she can't handle.

"And she would be sort of a loose cannon on the deck of a sailing ship in high wind.

"I don't know even that she could deliberate. I don't think she is inflating or exaggerating. If she just wanted to get off this case, she could have come up with something else.

"I regret it, but in my view she has good cause for being excused . . . . "

Appellant labels the court's action in excusing the juror as prejudicial error, contending that the court exceeded its discretion under sections 1089 and 1123 of the Penal Code to dismiss a juror for "good cause." In particular appellant claims there is no "demonstrable reality" of the inability of Mrs. Driscoll to perform her duties as a juror. Appellant urges there is at best a possibility of inability, and the trial court should have denied her request at least until something more substantial occurred. We cannot agree with this proposition. While it is true we may at times become very rigid in the demands we make of trial jurors, we are not insensitive or inflexible to their genuine problems and conflicts. We do not require that something "more substantial" should have occurred in the instant case. We uphold the propriety of the court's discharge of this juror, and therefore need not reach appellant's argument as to the prejudicial effect of the juror's dismissal.

Sections 1089 and 1123 of the Penal Code authorize the court to discharge a juror before the jury returns its verdict "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is

found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the Court may order him to be discharged . . . ."

A "good cause" determination in this context is one calling for the exercise of the court's discretion (e.g., *People v. Manriquez* (1976) 59 Cal.App.3d 426, 431 [130 Cal.Rptr. 585]; *People v. Franklin* (1976) 56 Cal.App.3d 18, 25 [128 Cal.Rptr. 94]), and if there is any substantial evidence supporting the decision, it will be upheld on appeal (*People v. Manriquez, supra*, at pp. 431-432).

It is a juror's duty to weigh the evidence and credibility of witnesses and to reach a verdict with impartiality. (See Code Civ. Proc., § 604; *People v. Compton* (1971) 6 Cal.3d 55, 60 [98 Cal.Rptr. 217, 490 P.2d 537].)

If at any time during the trial the juror loses the ability to render a fair and unbiased verdict, he can, under section 1123 of the Penal Code, be dismissed from the case. But the juror's inability to perform his functions must appear as a "demonstrable reality." (*People v. Collins* (1976) 17 Cal.3d 687, 696 [131 Cal.Rptr. 782, 552 P.2d 742]; *People v. Compton, supra*, 6 Cal.3d 55, 60; *People v. Hamilton* (1963) 60 Cal.2d 105, 124-127 [32 Cal.Rptr. 4, 383 P.2d 412].)

Pursuant to the foregoing guidelines, we feel that "good cause" was amply demonstrated supporting the dismissal of the juror in the instant case. We find that Mrs. Driscoll's physical and emotional reaction to the photographs and the testimony would be such that she would be unable to participate in the deliberation process and would not be able to follow the testimony in the trial so as to make an informed decision in the matter. The record supports these conclusions, and it substantially supports the demonstrable reality, that she would not be able to perform the function of a juror.

## IV

Over appellant's objection, respondent placed into evidence certain photographs and introduced testimony concerning the Tate murders which occurred before appellant joined the conspiracy. The appellant contends the trial court committed prejudicial error in so doing and urges a reversal. It was admitted that appellant Van Houten did not join the conspiracy charged in count VIII until after the commission

of the Tate Killings, consequently she could not have been criminally responsible for acts of coconspirators committed before she joined the conspiracy. (*People* v. *Weiss* (1958) 50 Cal.2d 535, 566 [327 P.2d 527]; *People* v. *Donahue* (1975) 46 Cal.App.3d 832 [120 Cal.Rptr. 489]; CALJIC No. 6.19.)

CALJIC No. 6.19: "Every person who joins a criminal conspiracy after its formation and who adopts its purposes and objects, is liable for and bound by the acts and declarations of other members of the conspiracy done and made during the time that he is a member and in pursuance and furtherance of the conspiracy.

"A person who joins a conspiracy after its formation is not liable or bound by the acts of the coconspirators or for any crime committed by the coconspirators before such person joins and becomes a member of the conspiracy.

"[Evidence of any acts or declarations of other conspirators prior to the time such person becomes a member of the conspiracy may be considered by you in determining the nature, objectives and purposes of the conspiracy, but for no other purpose.]" (Bracketed material in original.)

Respondent urges that these issues are disposed of in the case of *People* v. *Manson, supra*, 61 Cal.App.3d 102, and as such are law of the case.

■ Very simply stated, when an appellate court has rendered a decision and stated in its opinion a rule that is necessary to that decision, that rule is to be followed in subsequent proceedings in the same action. (*People* v. *Scott* (1976) 16 Cal.3d 242, 246 [128 Cal.Rptr. 39, 546 P.2d 327]; *People* v. *Shuey* (1975) 13 Cal.3d 835, 847-848 [120 Cal.Rptr. 83, 533 P.2d 211]; *People* v. *Hillery* (1967) 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208]; *People* v. *Terry* (1964) 61 Cal.2d 137, 151 [37 Cal.Rptr. 605, 390 P.2d 381].)

The court in *People* v. *Shuey, supra*, at page 841, in discussing the doctrine of law of the case, and the attempt to avoid multiple trials of the same issue, sets forth the principle as follows: "Fortunately, fundamental rules of appellate review are specifically designed to preclude the possibility of this type of multiple litigation of the same issue. Among these is the doctrine known as the 'law of the case' or the 'law of the former decision.' In the early case of *Tally* v. *Ganahl* (1907) 151

Cal. 418, 421 [90 P. 1049] this rule was aptly described. The doctrine of the law of the case is this: That where, upon an appeal, the Supreme Court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, and, as here, assumed, in any subsequent suit for the same cause of action, and this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular."

This principle applies to criminal as well as civil matters (*People* v. *Durbin* (1966) 64 Cal.2d 474 [50 Cal.Rptr. 657, 413 P.2d 433], *Castiel* v. *Superior Court* (1958) 162 Cal.App.2d 710 [328 P.2d 476]), and to decision of intermediate courts as well as courts of last resort. (*United Dredging Co.* v. *Industrial Acc. Com.* (1930) 208 Cal. 705, 712 [284 P. 922]; *People* v. *Shuey, supra*, 13 Cal.3d 835.)

The application of the rule is also now subject to the qualifications that the point of law involved must have been actually presented and determined by the court, and that the application of the doctrine will not result in an unjust decision. (*People* v. *Medina* (1972) 6 Cal.3d 484, 491 [99 Cal.Rptr. 630, 492 P.2d 433]; *People* v. *Shuey, supra*.)

■ This court finds that both the appellant and respondent are bound by the principle of law of the case, and we further find that the decision in *People* v. *Manson, supra*, 61 Cal.App.3d 102, went to the merits of the issues presented before this court and that the issues themselves were necessary to the decision, and said issues have been determined.

We must finally consider whether application of the doctrine in this case would result in an "unjust decision." (*People* v. *Medina, supra*, 6 Cal.3d at p. 492; *People* v. *Shuey, supra*, 13 Cal.3d at p. 846.) We conclude that it would not, consequently we find that appellant's position is without merit. The decision is just in light of the record before this court.

V

■ Appellant also urges that it was improper for the trial court to admit into evidence a number of grotesque, gruesome photographs of

the victims and this constitutes prejudicial error. Appellant further contends, because the prosecutor utilized these photographs in his argument to the jury, he is guilty of misconduct. We do not agree, indeed, we find it was proper just as we found the admission and utilization of the testimony and photographs relating to the Tate murders were proper.

■ We further find, that once again, appellant and respondent are bound by the principle of law of the case as set forth in *People v. Manson, supra*, 61 Cal.App.3d 102, and that said case went to the merits of the issues presently before this court, and that the issues themselves were necessary to the decision, and said issues have been determined. Once again, we find the application of the doctrine of law of the case would not result in an "unjust decision," to the contrary the evidence of guilt is overwhelming in the record before this court.

■ Appellant contends the prosecutor, in utilizing photographs of the victims in both killings in his argument, attempted to persuade the jury by the use of "reprehensible methods" and thus misconduct. Appellant further avers that the argument not only was misconduct because it was calculated to mislead the jury and was an appeal to passion and prejudice, but also because the photographs were introduced for a limited purpose (to prove aspects of the conspiracy), and were argued as substantive evidence "of the facts therein recited." We find no merit in these contentions.

The statement of facts not in evidence by the prosecuting attorney in his argument to the jury constitutes misconduct. (*People v. Bolton* (1979) 23 Cal.3d 208 [152 Cal.Rptr. 141, 589 P.2d 396]; *People v. Taylor* (1961) 197 Cal.App.2d 372, 381-384 [17 Cal.Rptr. 233].)

The court in the *Bolton* case, *supra*, at page 213, indicates: "In the present case, the prosecutor implied that there was additional evidence about the appellant's past known to him but unavailable to the jury. These implications tended to make the prosecutor his own witness—offering unsworn testimony not subject to cross-examination. It has been recognized that such testimony, 'although worthless as a matter of law, can be "dynamite" to the jury because of the special regard the jury has for the prosecutor, thereby effectively circumventing the rules of evidence.'" This is not our instant case, and we conclude the prosecutor's statements were proper.

In summation, the burden of proof is on the defendant to show the existence of misconduct. Even if misconduct exists, it is waived on appeal by no objection at the trial level and is not prejudicial if the objection is sustained as to the misconduct and the jury is told to disregard it unless the case is a close one where there is grave doubt as to the defendant's guilt or if the harm suffered by the misconduct is irreparable. (*People* v. *Perez* (1962) 58 Cal.2d 229, 247-248 [23 Cal. Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946]; *People* v. *Lyons* (1958) 50 Cal.2d 245, 252 [324 P.2d 556].) This burden of proof was not met in the instant case, and the record reflects no objections were made to the prosecutor's statements.

We would close this issue with a direct quote by the court from the case of *People* v. *Manson, supra,* 61 Cal.App.3d 102, 213, to wit: "While the prosecutor must be fair, he cannot be expected to be a saint."

■ In her petition for writ of habeas corpus, petitioner contends her imprisonment is illegal and in contravention of rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and by article I, sections 7, subdivision (a) and 15 of the California Constitution, in that she was denied the effective assistance of counsel at her trial. More specifically, petitioner contends her trial counsel, Maxwell S. Keith, was ineffective for failing to object or move to suppress petitioner's taped alleged incriminatory statements to homicide investigator, Michael McGann, which statements were bereft of warnings under *Miranda* v. *Arizona*, (1966) 384 U.S. 436 [76 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. There is absolutely no merit in these contentions.

The record before this court clearly reflects a well-tried, well-considered, difficult tactical decision-making effort by petitioner's counsel, Mr. Keith. We do not expect trial lawyers to be soothsayers, with the ability to gaze into crystal balls and predict future holdings of the appellate courts; rather, we expect trial lawyers to be reasonably competent attorneys acting as diligent, conscientious advocates as per the standard set forth in *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal. Rptr. 732, 590 P.2d 859]. We find Mr. Keith has more than met that standard.

Petitioner relies upon the case of *People* v. *Rucker* (1980) 26 Cal.3d 368 [162 Cal.Rptr. 13, 605 P.2d 843], wherein statements bereft of

*Miranda* warnings were held not admissible on the issue of state of mind or diminished capacity as an issue. The *Rucker* case, *supra*, is clearly distinguishable from the case at bar. In that case, the defendant's state of mind was in issue when he was interrogated; he was the prime suspect; he was in custody for the crime involved, murder; and the entire police focus was on him, and him alone, for the commission of the crime involved. This is not our case. When petitioner was interrogated by Investigator McGann, she was not a suspect in the La Bianca murders; there was no central focus on her as the prime suspect; and certainly no concern about her state of mind at that time and place. Petitioner was in custody, however, not for the La Bianca murders, but for receiving stolen property.

The record reflects the trial judge carefully conferred with all counsel regarding any objections before the tapes were played. It is quite obvious to the court, petitioner's counsel made a tactical decision as to the tapes, and that at a much later time, after the completion of the trial, he deems that decision inappropriate. It is too late.

The judgment is affirmed, and the petition for writ of habeas corpus is denied.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.

Appellant's petitions for a hearing by the Supreme Court were denied March 11, 1981.