[No. B037718. Second Dist., Div. Two. Mar. 22, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
DEWAYNE GERMAN THOMAS, Defendant and Appellant.

**COUNSEL**

Bruce Daniel Rosen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Marc E. Turchin and Pamela C. Hamanaka, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COMPTON, Acting P. J.**—A jury convicted defendant Dewayne German Thomas of six counts of robbery (Pen. Code[1], § 211), five counts of kidnapping for robbery (§ 209, subd. (b)), four counts of forcible rape in concert (§§ 261, subd. (2), 264.1), two counts of oral copulation in concert (§ 288a, subd.(a)), and one count each of kidnapping (§ 207, subd.(a)), attempted rape (§§ 664, 261, subd. (2)), and sexual battery (§ 243.4). The jury also found true a variety of enhancement allegations pursuant to sections 667.8, 12022, subdivision (a), 12022.3, subdivision (a), and 12022.5. Probation was denied and defendant was sentenced to state prison for an aggregate term of 81.4 years to life. This appeal follows. We modify the sentence imposed but otherwise affirm the judgment of conviction entered on the verdicts.

Since defendant neither denies his guilt nor challenges the sufficiency of the evidence to support his conviction, it is unnecessary to recite the testimony in any detail. It is sufficient to state simply that over a three-week period in July 1986, defendant and his companions kidnapped and robbed at least six different persons at various locations throughout greater Los Angeles. Two of the female victims were sexually assaulted at some point during the commission of the other offenses. Most of the crimes involved either the use or possession of a firearm. On this and related evidence, including several incriminating admissions made to the police, defendant

---

[1] All further references are to the Penal Code unless otherwise indicated.

was convicted, the jury having obviously rejected his testimony that he merely observed but did not participate in the commission of the crimes.

The principal issue raised here is whether the trial court erred when it discharged one juror for cause during deliberations and allowed the reconstituted jury to return partial verdicts knowing that another juror would be excused immediately thereafter.

The undisputed facts are as follows. The case was submitted to the jury on Friday, July 1, 1988, after almost five weeks of testimony. Six days later, on Thursday, July 7, 1988, the court received a note from the foreperson indicating that one of the jurors was impeding deliberations because of her bias against police officers.[2]

The court, joined by counsel for both the People and defendant, subsequently conducted a hearing in chambers with the foreperson to determine the nature of the problem. In answer to the court and counsel's inquiry, the foreperson essentially stated that during the course of deliberations one of the jurors, Anna Williams, announced that she could not accept the testimony of the officers who had testified at trial because of a firm belief, based upon personal experience, that police officers in Los Angeles generally lie.[3] She thereafter rejected the jury's attempt to consider the issue, thus bringing deliberations to a halt until the discussion proceeded to other matters.

The court questioned Juror Williams in chambers with both counsel present, asking her to respond to the foreperson's allegations. Although she denied stating that all officers lie, Williams admitted to telling the other jurors about racist statements made by police officers in her neighborhood. The court then elected to examine each of the remaining jurors independently to determine their perception of Williams's statements. During the discussions which followed, most jurors corroborated the foreperson's version of events.

Based upon the foregoing, the court discharged Juror Williams and replaced her with one of three remaining alternates. After denying defendant's motion for mistrial, the court directed the clerk to select an alternate by lot and then instructed the reconstituted jury to begin its deliberations

---

[2] The foreperson's note stated: "One of our members is convinced that the policemen in this area lied. This is a firm belief that appears to prejudice her considering the testimony of two policemen. [¶] Question: How shall we proceed, use alternate or ignore?"

[3] The issue of the officers' credibility apparently arose during the jury's consideration of several incriminating statements defendant made to the police at or about the time of his arrest.

anew pursuant to CALJIC 17.51.[4] The jury thereafter deliberated for approximately 30 minutes before being excused until the following day, Friday, July 8, 1988.

When proceedings resumed on Monday, July 11, 1988, one of the jurors, Mr. Kennedy, informed the court that he had exceeded the number of days allowed by his employer for jury duty and that he risked losing his job if he continued to serve. After confirming Juror Kennedy's statements and discussing the matter with counsel, the court announced its intention to replace him with another alternate.

Just prior to doing so, however, the court was advised that the jury had reached verdicts on some but not all of the counts against defendant. Over defense counsel's objection, the court elected to have the jury return its partial verdicts *before* discharging Kennedy from the panel.

At that juncture, the jury returned guilty verdicts on 11 counts and found various enhancement allegations to be true. The court ordered the clerk to enter the partial verdicts on the record.

Following entry of the verdicts, but before discharging Kennedy from the panel, the court inquired whether any of the other jurors had "impediments or any hardships that would effect your continuing to deliberate through to a foreseeable conclusion to the case." One juror, Mr. Martinez, replied that he had been ill since the commencement of jury deliberations and needed medical treatment. After conferring with counsel, the court discharged both Kennedy and Martinez and replaced them with the remaining alternates. Defendant's motion for mistrial again was denied and the newly constituted jury was instructed pursuant to CALJIC No. 17.51. Deliberations resumed on Wednesday, July 13, 1988.

Some three weeks later, the jury returned verdicts on ten different counts, finding defendant guilty on nine and not guilty on one. After determining that the panel was unable to reach a consensus on the remaining 20 counts, the court declared a mistrial as to those charges.

---

[4] The court instructed the jury as follows: "Ladies and gentlemen of the jury, one of your number has been excused for legal cause and replaced with an alternate juror. You must not speculate or consider for any purpose the reasons for such excuse. [¶] The People and the defendant have a right to have a verdict reached only after full participation of the twelve jurors who ultimately return the verdict. This right may be assured in this case only if the jury begins its deliberations again from the beginning. [¶] You are therefore instructed to set aside and disregard all past deliberations and begin deliberations anew. This means that each remaining original juror must set aside and disregard the earlier deliberations as if they had not taken place. [¶] You shall now retire for your deliberations in accordance with all the instructions previously given."

Based upon the foregoing sequence of events, defendant first argues that the trial court abused its discretion when it discharged Juror Williams from the panel and replaced her with an alternate. We disagree.

■ Section 1089 and former section 1123[5] authorize a trial court to dismiss a juror before the jury returns its verdict if the juror becomes ill or upon a showing of good cause is found unable to perform his or her duty. (*People* v. *Burgener* (1986) 41 Cal.3d 505, 519 [224 Cal.Rptr. 112, 714 P.2d 1251]; *People* v. *Diaz* (1984) 152 Cal.App.3d 926, 933 [200 Cal.Rptr. 77]; *People* v. *Van Houten* (1980) 113 Cal.App.3d 280, 287 [170 Cal.Rptr. 189].) The determination of "good cause" in this context is one calling for the exercise of the court's discretion; and if there is any substantial evidence supporting that decision, it will be upheld on appeal. (*People* v. *Abbott* (1956) 47 Cal.2d 362, 371 [303 P.2d 730]; *People* v. *Moore* (1985) 166 Cal.App.3d 540, 547 [211 Cal.Rptr. 856]; *People* v. *Van Houten, supra,* 113 Cal.App.3d at p. 288.) A juror's inability to perform his or her functions, however, must appear in the record as a "demonstrable reality" and bias may not be presumed. (*People* v. *Collins* (1976) 17 Cal.3d 687, 696 [131 Cal.Rptr. 782, 552 P.2d 742]; *People* v. *Compton* (1971) 6 Cal.3d 55, 60 [98 Cal.Rptr. 217, 490 P.2d 537]; *People* v. *Franklin* (1976) 56 Cal.App.3d 18, 25-26 [128 Cal.Rptr. 94].)

■ A juror's duty is to weigh the evidence and credibility of witnesses with impartiality and to reach a fair and unbiased verdict. (*People* v. *Compton, supra,* 6 Cal.3d at pp. 59-60; *People* v. *Farris* (1977) 66 Cal.App.3d 376, 386 [136 Cal.Rptr. 45].) It is well settled that a sitting juror's actual bias, which would have supported a challenge for cause, renders him "unable to perform his duty" and thus subject to discharge and substitution under section 1089 and former section 1123. (*People* v. *Keenan* (1988) 46 Cal.3d 478, 532 [250 Cal.Rptr. 550, 758 P.2d 1081]; see also *People* v. *Warren* (1986) 176 Cal.App.3d 324, 327 [221 Cal.Rptr. 768].) "If at any time during the trial the juror loses the ability to render a fair and unbiased verdict, he can, under [former] section 1123 of the Penal Code, be dismissed from the

---

[5] Section 1089 provides, in pertinent part: "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors."

Prior to 1989, section 1123 provided, in relevant part: "If before the jury has returned its verdict into court, a juror becomes sick or upon other good cause shown to the court is found to be unable to perform his duty, the court may order him to be discharged. If any alternate jurors have been selected as provided by law, one of them shall then be designated by the court to take the place of the juror so discharged. . . ."

Section 1123 was repealed as of January 1, 1989, and its substantive provisions recodified in Code of Civil Procedure section 233.

case. . . . [E]ven though a juror may claim he can be impartial, he can still be properly excluded from the case if there are so many factors weighing against this possibility, that neither he, nor any other person similarly situated, could render a fair and unbiased decision." (*People* v. *Farris, supra*, 66 Cal.App.3d at p. 386.)

■ There was ample cause to dismiss the juror in the instant case. Williams obviously had prejudged the credibility of the police officers who testified at trial and was unable to cast aside her personal bias in weighing the evidence.

Although she disclaimed any particular bias toward police officers, there is substantial evidence to support the court's finding that Williams was not being truthful in that regard.

Defendant sees something sinister in the fact that the trial judge failed to ask her whether she could fairly consider the case notwithstanding her belief that all officers routinely lie. It is obvious that no amount of questioning was likely to lead to an outright admission of bias, and the court properly relied upon the testimony of the other jurors in determining the issue. Simply put, there was no abuse of discretion.

■ Next, the trial court did not err in receiving the partial verdicts knowing that Juror Kennedy would be discharged immediately thereafter.

Defendant argues that the court should have declined the jury's partial verdicts, substituted the alternate, and then ordered the reconstituted jury to begin deliberation anew.

Inasmuch as the verdicts returned and recorded prior to the discharge of Jurors Kennedy and Martinez were the product of a unanimous panel of 12 competent and qualified jurors, we have difficulty discerning the nature of defendant's complaint as to those verdicts.

Certainly, the work of the jury in rendering those verdicts, the nature of which were unknown to anyone except the jurors, should not be lightly set at nought simply because two of the jurors who participated were subsequently discharged and we find nothing untoward in the fact that the trial court knew in advance of receiving the verdicts that one of the jurors was to be excused from further deliberation on the remaining charges.

Further, we fail to see how the procedure suggested by defendant would have been any more beneficial to defendant's interests than the one

employed here. The arguments to the contrary are nothing less than speculative.

Defendant's complaint concerning the verdicts rendered by the reconstituted jury must also fall before the same principles of law.

■ The right to a fair trial by an impartial jury is one of the fundamental constitutional rights of a criminal defendant. (See U.S. Const., Amend. VI; Cal. Const., art. I, § 16; *Duncan* v. *Louisiana* (1968) 391 U.S. 145, 149 [20 L.Ed.2d 491, 496, 88 S.Ct. 1444]; *People* v. *Collins, supra,* 17 Cal.3d 687, 692-693.) However, a defendant's right to a fair and impartial jury does not entitle him to a jury composed of any particular individuals. (*People* v. *Howard* (1930) 211 Cal. 322, 325 [295 P. 333, 71 A.L.R. 1385]; see also *People* v. *Moore, supra,* 166 Cal.App.3d 540, 548; *Darcy* v. *Moore* (1942) 49 Cal.App.2d 694, 700 [122 P.2d 281].) ■ "[W]here an alternate juror, approved by defendant in voir dire, is allowed to deliberate on the jury panel, the defendant bears a heavy burden to demonstrate that he was somehow harmed thereby." (*People* v. *Hall* (1979) 95 Cal.App.3d 299, 307 [157 Cal.Rptr. 107].) This is so because alternate jurors are selected at the same time, are subject to the same qualifications and take the same oath as regular jurors. They hear the same evidence and are bound by the same rules and instructions as the regular jurors, and until the verdict is rendered they are at all times available and qualified to participate as regular jurors. (See *People* v. *Burgess* (1988) 206 Cal.App.3d 762, 768 [253 Cal.Rptr. 828]; see also *People* v. *Johnson* (1988) 200 Cal.App.3d 1553, 1561-1563 [247 Cal.Rptr. 767]; *People* v. *Hess* (1951) 107 Cal.App.2d 407, 425 [237 P.2d 568].)

In *People* v. *Collins, supra,* 17 Cal.3d 687, our Supreme Court made it clear that the substitution of an alternate juror after submission of the case to the jury does not offend constitutional proscriptions so long as the reconstituted jury is instructed to start deliberations anew. "[W]e . . . reject defendant's contention that a mistrial must be declared when a juror is dismissed for good cause after deliberations have begun. To declare a mistrial would surely present the opportunity to satisfy the essential requirement that a verdict be unanimously reached by 12 fully participating jurors in a subsequent retrial, but the right to trial by jury does not require a declaration of a mistrial when a properly qualified alternate juror is available and that juror fully participates in all of the deliberations which lead to a verdict." (*Id.* at p. 693.)

■ Nothing in *Collins* limits the holding of that case to *preverdict* deliberations, and we can find no persuasive reason to impose such a limitation here. The unambiguous wording of section 1089 authorizes a trial court

to substitute an alternate for a regular juror "*at any time,* whether before or after the final submission of the case to the jury. . . ." (Italics added.) We presume the Legislature meant what it said when it broadened the statutory language in 1933 to include the phrase "at any time."

That amendment tacitly recognized the need for some procedure short of a mistrial that would permit the fair and efficient resolution of a case once deliberations have begun and a juror becomes unable to continue jury service. The problem is acute when the trial has been a lengthy one and consequently the remedy of mistrial would necessitate a second expenditure of substantial prosecution, defense, and judicial resources. The court in *Collins* removed any constitutional impediment to the substitution of an alternate by requiring the trial court to instruct the reconstituted jury to set aside its past deliberations and begin deliberating anew. In our view, such a procedure also minimizes any possibility of prejudice where the substitution occurs after the jury renders a partial verdict.[6]

Defendant nevertheless insists that there is an inherent coercive effect upon an alternate juror who joins a jury that has, as in this case, already considered several of the charges and rendered partial verdicts. That argument rests on the assumption that both the regular jurors and the alternates alike will ignore the admonition to set aside their prior findings and begin deliberations anew. Absent evidence to the contrary, however, we presume that "juries made aware of the rights involved will faithfully follow such instructions." (*People* v. *Collins, supra,* 17 Cal.3d 687, 694, fn. omitted.)

A majority of the court in *People* v. *Aikens* (1988) 207 Cal.App.3d 209 [254 Cal.Rptr. 30] similarly concluded that it was not error for a trial court to substitute a juror after a partial verdict had been returned and to allow the reconstituted jury to reach a final verdict on the remaining charges. In so holding, the court observed: "In exercising its discretion concerning juror substitution the trial court should give paramount consideration to the constitutional rights of the accused, but weight should also be given to the state's interest and the consequence which might flow therefrom if a mistrial is granted causing the prolongation of criminal proceedings." (*Id.* at p. 214.) We agree.

At a time when criminal trials are becoming increasingly complex and taking longer to try, it stands to reason that courts frequently will be forced

---

[6] Our Supreme Court recently has recognized that "unforeseen circumstances may require substitution of a juror at the penalty phase of a capital trial, even though the alternate did not take part in the guilt phase deliberations." (*People* v. *Fields* (1983) 35 Cal.3d 329, 351, fn. 9 [197 Cal.Rptr. 803, 673 P.2d 680].) Although the court cautioned that it "should not adopt a policy which contemplates substitution of alternate jurors after the guilt trial as a routine procedure" (*ibid.*), we think the substitution procedure is warranted where, as in the instant case, the alternative is a wholesale miscarriage of justice.

to discharge jurors because of illness or the demands of the workplace. To deal with this problem, trial judges must be afforded the discretion to develop procedures that both preserve the rights of the accused and promote the efficient administration of justice.

Applying these principles to our case, we are convinced the trial court did not abuse its discretion when it received the jury's partial verdict knowing that one of the jurors later would be excused from the panel for good cause. This is particularly true in light of the extra precautions taken by the court to assure that the reconstituted jury would begin its deliberations anew and not be tainted by the earlier verdict. These precautions included, of course, the reading of CALJIC No. 17.51 and several strongly worded admonitions to both the regular jurors and the alternates that they were to consider the facts unconstrained by any prior determination.

Contrary to the argument advanced by defendant, this is not a case where the jury rushed to judgment after the alternate jurors were seated. In point of fact, the newly constituted jury deliberated for almost three weeks before reaching a verdict on some but not all of the remaining counts. The length of deliberations and the discriminating verdicts reached by the jury establish beyond doubt that defendant suffered no prejudice because of the court's action.

In any event, the panel that rendered the partial verdicts was essentially the same as that which rendered the final verdicts. The alternates were chosen along with the regular jurors by the same procedures and accepted by defendant. They heard all the evidence and the instructions on the law and were no less competent than the regular jurors. Defendant does not claim nor, based on the facts of this case, could he claim that the result would have been any different had the alternates not participated. We find no constitutional impediment to the taking of the partial verdicts and the substitution of the alternate jurors.

Defendant next makes a myriad of attacks on his sentence of 81.4 years in state prison, and argues that as a minimum, the matter should be remanded for sentencing.[7] We turn first to the argument that the trial court failed to

---

[7]The trial court designated count 44, kidnapping for robbery, as the principal term and imposed the midterm of five years. A consecutive term of one year and four months (one-third the midterm of four years) was imposed on count 39, sexual battery. An additional consecutive term of one year (one-third the midterm of three years) was imposed on count 43, robbery. Full, consecutive seven-year terms were imposed on counts 4, 5, 6, 7, 41, and 42 (oral copulation and rape in concert). A full, consecutive three-year term was imposed on count 3, attempted rape. A three-year enhancement pursuant to section 12022.2 was imposed on counts 5, 6, 7, 41, and 42. A two-year enhancement pursuant to section 12022.5 was imposed on counts 3 and 44. Consecutive life terms, each with a two-year enhancement pursuant to

adequately state its reasons for the imposition of consecutive sentences generally and the imposition of full-term consecutive sentences pursuant to section 667.6, subdivision (c).

■ A trial court may sentence forcible sex offenders convicted of more than one crime consecutively or concurrently. After choosing to sentence consecutively, the court must make the separate and distinct decision whether to impose the consecutive terms under the principal/subordinate scheme of section 1170.1 or under the full and separate terms of section 667.6, subdivision (c). The latter section allows the court the discretion to impose full, separate, and consecutive terms "whether or not the crimes were committed during a single transaction." When sentencing under subdivision (c), the court must state its reasons not only for imposing consecutive sentences (*People* v. *Craft* (1986) 41 Cal.3d 554, 559 [224 Cal.Rptr. 626, 715 P.2d 585]) but also for sentencing under this provision rather than under section 1170.1. (*People* v. *Belmontes* (1983) 34 Cal.3d 335, 347 [193 Cal.Rptr. 882, 667 P.2d 686]; *People* v. *Smith* (1984) 155 Cal.App.3d 539, 543 [202 Cal.Rptr. 259].)

Section 667.6, subdivision (d), by contrast, provides that the trial court is without discretion in the matter, but must impose full, separate, and consecutive terms "if the crimes involve separate victims or involve the same victim on separate occasions." When the court sentences under subdivision (d), it need not give a statement of reasons. (*People* v. *Craft, supra*, 41 Cal.3d at p. 559; *People* v. *Fleming* (1983) 140 Cal.App.3d 540, 545 [189 Cal.Rptr. 619].)

■ Although there is some question in our case whether the trial court should have sentenced under subdivision (c) or (d), the record contains an adequate statement of reasons justifying both the decision to sentence consecutively and the decision to sentence under section 667.6.

■ We think it important to point out that the requirement of a statement of reasons is not simply a ritualistic exercise which is an end unto itself nor is it a procedure by which a defendant may play "Simon says" on appeal. The manifest purpose of a statement of reasons is simply to allow for a meaningful appellate review of the exercise of discretion by the trial court. (See *People* v. *Martin* (1986) 42 Cal.3d 437, 449-450 [229 Cal.Rptr. 131, 722 P.2d 905]; *People* v. *Blessing* (1979) 94 Cal.App.3d 835, 838 [155 Cal.Rptr. 780].)

■ Our review of the sentencing decision here has not been impaired by any of the purported omissions relied upon by defendant in seeking a

---

section 12022.5, were imposed on counts 2, 35, 36, 45, and 46 (kidnapping). The remaining counts and enhancement were stayed pursuant to section 654.

reversal. Even a cursory reading of the record establishes that defendant's crimes met every criteria listed in rule 425 of the California Rules of Court for imposing consecutive sentences. Moreover, we have no doubt that the court recognized that its use of the more punitive provisions of section 667.6 constituted an additional sentencing choice as required by *People v. Belmontes, supra,* 34 Cal.3d at p. 348. (See also *People v. McElrath* (1985) 175 Cal.App.3d 178, 187-188 [220 Cal.Rptr. 698].) There was no error.

■ We do agree with defendant, however, that the trial court improperly imposed a full-term consecutive sentence pursuant to section 667.6, subdivision (c) for attempted rape. Both *People v. Reber* (1986) 177 Cal.App.3d 523, 535 [223 Cal.Rptr. 139] and *People v. Le* (1984) 154 Cal.App.3d 1, 10-11 [200 Cal.Rptr. 839] make it clear that attempted crimes are not included within the ambit of the statute. As to this particular offense, the court should have imposed one-third the middle base term of three years pursuant to section 1170.1, subdivision (a).[8]

■ Defendant finally contends that the trial court erred in imposing firearm-use enhancements (§ 12022.5) on the sentences imposed on counts 2 and 3, 35 and 36, and 45 and 46.[9] He argues that these six counts actually involved three different transactions and that, under the reasoning of *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23], only three use enhancements were proper.

In *Culbreth,* a bare majority of the Supreme Court held that section 12022.5 may be invoked only once where multiple crimes of violence are "all part of a single melee [and] [t]here was but one occasion, one intent, one objective, one indivisible transaction." (17 Cal.3d at p. 335.) This is true even when multiple punishments on the underlying offenses comports with section 654 because the defendant committed separate acts of violence

---

[8] Section 1170.1 provides in relevant part: ". . . The subordinate term for each consecutive offense which is not a 'violent felony' as defined in subdivision (c) of Section 667.5 shall consist of one-third of the middle term of imprisonment prescribed for each other such felony conviction for which a consecutive term of imprisonment is imposed, and shall exclude any enhancements." Attempted rape is not listed in section 667.5, subdivision (c).

[9] The offenses involved in counts 2 and 3, kidnapping and attempted rape, occurred on July 4, 1986, when defendant and his companions accosted the victim, Lori-Ann B., in her carport and then forced her into their van at gunpoint. She was driven to another location where she was ordered, again at gunpoint, to perform various sexual acts. In counts 35 and 36, two different victims, Andrea S. and Gordon T., were kidnapped in front of their apartment complex on July 17, 1986, and then driven to another location where they were robbed of their wallets, money, and jewelry. As in the earlier incident, defendant used a firearm during the commission of the offenses. Counts 45 and 46 also involved the kidnapping of two victims, Sherry H. and Edward D., at gunpoint on July 24, 1986. After being ordered into a waiting van, they were driven to another location and robbed of various personal belongings. Once again, defendant personally used a firearm during the offenses.

against different victims. (*Id.* at p. 334; see also *People* v. *Johns* (1983) 145 Cal.App.3d 281, 294 [193 Cal.Rptr. 182].) The court reasoned that the legislative purpose of section 12022.5 is to deter firearm use on *subsequent* occasions, and that no additional deterrent effect would be achieved by multiplying enhancements based on the fortuity of the number of victims or offenses which a single occasion might entail. (See *People* v. *Levitt* (1984) 156 Cal.App.3d 500, 510-513 [203 Cal.Rptr. 276].)

*Culbreth* and its progeny have recognized only two exceptions to the so-called "single-occasion" rule. "First, when there is a meaningful separation of time between the originally contemplated crime and a subsequent crime, the defendant then has time to pause and reflect on the penal consequences (i.e., another § 12022.5 sentence) of his subsequent use of a firearm, and the deterrent purpose would therefore be served by permitting additional enhancements. Second, when an 'independent criminal objective' emerges, which is unrelated to the defendant's original criminal objective for which he used the firearm, the defendant can again reflect on the enhanced penal consequences of using the firearm in pursuing this new objective, and the deterrent purposes would again be served by permitting multiple enhancements. [Citation.]" (*People* v. *McElroy* (1989) 208 Cal.App.3d 1415, 1429, fn. 11 [256 Cal.Rptr. 853].)

Although the "single-occasion" rule articulated in *Culbreth* has been criticized because it can result in punishing those with a lesser criminal intent more severely than those who harbor more sinister objectives (see *People* v. *Raby* (1986) 179 Cal.App.3d 577, 590 [224 Cal.Rptr. 576]; see also *People* v. *Nguyen* (1988) 204 Cal.App.3d 181, 194, fn. 11 [251 Cal.Rptr. 40]), our Supreme Court has not yet undertaken to reconsider the underpinnings of its decision. To our mind the dissent in *Culbreth* contains the sounder and more logical reasoning. As an intermediate appellate court, however, we are compelled in this case to apply the rule of the majority opinion. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) We do respectfully urge the high court to reexamine *Culbreth* in light of the thoughtful criticisms voiced over the past decade.

Here, there can be little doubt that the kidnapping in count 2 was incident to the attempted rape in count 3, and that the kidnappings for robbery in the remaining counts were incident to one another. Each pair of crimes, committed on three separate dates, constituted one indivisible course of conduct. As a result, only three use enhancements, one for each set of incidents, were proper under section 12022.5, regardless of the number of use findings by the jury.

The abstract of judgment is ordered modified to impose a one-year sentence on count 3, exclusive of enhancements, and to stay all but three of the firearm-use enhancements imposed on counts 2, 3, 35, 36, 45, and 46 pending completion of the sentence at which time the stay shall become permanent. As modified, the judgment is affirmed.

Gates, J., and Fukuto, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 27, 1990.