[No. A069479. First Dist., Div. Five. Dec. 11, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MARTY RICHARD PIERCE, Defendant and Appellant.

**COUNSEL**

Peter Ottenweller, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General,

Peggy S. Ruffra and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## KING, J.—

### I. INTRODUCTION

In this case we hold that Judge R. Bryan Jamar erred by failing to state reasons for imposing upper terms of imprisonment, and we remand the cause for resentencing by another judge because of Judge Jamar's persistent failure or inability to perform the fundamental duty of a sentencing court to state reasons for its sentencing choices.

### II. BACKGROUND

Marty Richard Pierce pleaded guilty to four counts of sale of methamphetamine (Health & Saf. Code, § 11379). Judge Jamar imposed the upper term of four years for one count, a consecutive subordinate one-year term for another count, and concurrent upper terms of four years for the remaining counts, for a total prison sentence of five years.

Judge Jamar gave no statement of reasons for imposing the upper terms. He simply said, "The circumstances in aggravation and mitigation as set forth on page four of the presentence report are adopted as the circumstances in aggravation and mitigation. Court finds that circumstances in aggravation outweigh the circumstances in mitigation."[1] The probation report described six aggravating factors and two mitigating factors.[2]

### III. DISCUSSION

■ Judge Jamar violated the duty of a court to state reasons for its sentencing choices. "The reasons for selecting the upper . . . term shall be

---

[1] Judge Jamar did state a reason for consecutive sentencing, commenting that the consecutively sentenced offense was "separate and distinct." (*People* v. *Calvert* (1993) 18 Cal.App.4th 1820, 1838 [23 Cal.Rptr.2d 644].)

[2] The court rendered judgment on January 25, 1995. Pierce's notice of appeal is dated March 16, 1995, but is file stamped March 29, 1995. The People contend the appeal should be dismissed because it was not timely filed within 60 days after the rendition of judgment. (Cal. Rules of Court, rule 31(a).) But the envelope in which Pierce mailed the notice of appeal, which the superior court clerk has retained in the case file, is postmarked March 17, 1995. Because the notice of appeal was *mailed* within the 60-day deadline, it is deemed to have been timely filed. (Cal. Rules of Court, rule 31(e).)

stated orally on the record, and shall include a concise statement of the ultimate facts which the court deemed to constitute circumstances in aggravation . . . justifying the term selected." (Cal. Rules of Court, rule 420(e); see also Cal. Rules of Court, rules 406, 433(c)(1).) ■■ Incorporating by reference the enumeration of aggravating and mitigating factors in a probation report, as was done here, does not satisfy the requirement of a statement of reasons. (*People* v. *Fernandez* (1990) 226 Cal.App.3d 669, 678-679 [276 Cal.Rptr. 631]; *People* v. *Turner* (1978) 87 Cal.App.3d 244, 247 [150 Cal.Rptr. 807].) "[M]erely incorporating the probation report by reference violates the spirit of the sentencing laws and fails to properly explain the basis for any sentence choice." (*People* v. *Fernandez, supra,* 226 Cal.App.3d at p. 679.)

The People contend this error was harmless because the sentence is supported by the record and a lesser sentence would not be likely on remand. Admittedly, such error is often, though not always, deemed harmless. (See 226 Cal.App.3d at pp. 679-684.) We cannot find the harmless error in this case, however, for a unique reason: Judge Jamar is a notorious recidivist with a long history of failure or inability to comply with the various sentencing rules requiring a statement of reasons, which indicates he is not properly exercising sentencing discretion.

In Division Five of this court, for nearly 10 years, we have repeatedly reversed Judge Jamar for failing to state reasons for denying probation and imposing a prison term (*People* v. *Wychocki* (1987) 188 Cal.App.3d 1063, 1066-1067 [233 Cal.Rptr. 830] (opn. by King, J.); *People* v. *Estes* (Feb. 11, 1992) A055058 [nonpub. opn. by King, J.]), for failing to state reasons for imposing full consecutive sentences (see *People* v. *Wychocki, supra,* 188 Cal.App.3d at p. 1066), and for failing to state reasons for a sentencing choice after revocation of probation (*People* v. *Clay* (June 8, 1992) A055980 [nonpub. opn. by Haning, J.]).

We have also repeatedly warned Judge Jamar to clean up his act. In 1987, when we first reversed him for failing to state reasons for denying probation, we noted that another division of this court had previously reversed him twice in the same case for failure to comply with its judgment requiring him to state reasons for imposing full consecutive sentences. (*People* v. *Wychocki, supra,* 188 Cal.App.3d at p. 1066; see *People* v. *Hunter* (1986) 184 Cal.App.3d 1531, 1535-1536 [229 Cal.Rptr. 330].) We then commented, "A persistent failure to comply with sentencing rules is bad enough; a refusal to comply with the specific directions of higher courts is inexcusable. Such failures not only result in unnecessary appeals imposing an additional workload on an overburdened judicial system, they also result in a needless and

wasteful expense to the taxpayers of California." (*People* v. *Wychocki, supra*, 188 Cal.App.3d at p. 1067.)

In 1992, when in an unpublished opinion we again reversed Judge Jamar for failing to state reasons for denying probation, we commented, "We are concerned that Judge Jamar may be lapsing into prior bad habits, and urge him to take greater care in future sentencing and thereby avoid further (and perhaps more emphatic) appellate commentary." (*People* v. *Estes, supra*, A055058.)

Later in 1992, when in another unpublished opinion we reversed Judge Jamar for failure to state reasons for his sentencing choice after revocation of probation, we expressed "our distress and frustration that we are forced to reverse another criminal case, at needless expense to the taxpayers when they can ill afford it, due to the repeated failure of the sentencing judge to follow the clear requirements of the law, despite numerous admonitions from the Court of Appeal." (*People* v. *Clay, supra*, A055980.) Further, we warned Judge Jamar that similar transgressions in the future might lead to remand for resentencing by a different judge: "This is the third instance within the past 90 days that has come to our attention where the same judge has committed this same failure to comply with the sentencing requirements. Should this occur again, we are inclined to exercise our authority on remand to direct that sentencing be performed by a different judge. At a time when the courts' caseloads are increasing, but our budgets and ability to muster the resources to meet those caseloads are decreasing, we cannot continue to reverse cases due to the repeated failure of a particular judge to perform a required, and relatively simple judicial task." (*Ibid.*)

Other divisions of this court have likewise complained in unpublished opinions of Judge Jamar's failure to state reasons for sentencing decisions. For example, Division Two commented in 1992, "we are distressed" that Judge Jamar "continues (despite numerous admonitions in both published and unpublished cases emanating from this court) to defy the appellate courts, the mandate of the Legislature ([Pen. Code,] § 1170, subd. (c)), and the California Rules of Court (rules 439(d) and 433)." (*People* v. *Gonzalez* (Apr. 17, 1992) A053629 [nonpub. opn. by Kline, J.].)

Now, Judge Jamar has done it again. "The most fundamental duty of a sentencing court is to state reasons justifying the sentencing choices it makes." (*People* v. *Fernandez, supra*, 226 Cal.App.3d at p. 678.) Judge Jamar has repeatedly omitted to perform that fundamental duty in various contexts. We do not know if his conduct is intentional or negligent, but either way it is a basis for censure as a "persistent failure or inability to

perform the duties of office." (Cal. Rules of Court, rule 904(a).) Short of a formal judicial disciplinary proceeding, which is not our bailiwick, we are compelled to increase our efforts to get Judge Jamar to comply with the sentencing laws by making good on our previous threat of remand for resentencing by a different judge and by publishing this opinion. A finding of harmless error would tell Judge Jamar that he can continue with impunity to ignore the sentencing rules. In the context of this case and Judge Jamar's sentencing history, that is the wrong message to send.

We therefore reverse the judgment and order resentencing by a judge other than Judge Jamar. (See *Catchpole* v. *Brannon* (1995) 36 Cal.App.4th 237, 247, fn. 4 [42 Cal.Rptr.2d 440].) After twice warning Judge Jamar that his continued failures to comply with the sentencing laws would evoke a sterner appellate response, we can only say, in the language of the times, "three strikes and you are out."[3]

## IV. Disposition

The judgment is reversed and the cause is remanded with directions to the Presiding Judge of the Sonoma County Superior Court to assign the case to a judge other than R. Bryan Jamar for resentencing.

Peterson, P. J., and Haning, J., concurred.

---

[3]Pierce also contends Judge Jamar erred by failing to consider a commitment to the California Rehabilitation Center (CRC) (see Welf. & Inst. Code, § 3051), or alternatively that trial counsel was ineffective in failing to raise the issue of a possible CRC commitment. Because trial counsel will have the opportunity to propose a CRC evaluation on remand, we need not address this point.