Filed 12/3/15  P. v. Boone CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>EMANUEL L. BOONE,<br><br>        Defendant and Appellant. | B255781<br><br>(Los Angeles County<br>Super. Ct. No. TA129169) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Laura R. Walton, Judge.  Affirmed with modification.

Paul J. Katz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Supervising Deputy Attorney General, William N. Frank, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

This appeal arises out of Emanuel L. Boone's (defendant) convictions for crimes against the mothers of his children. He argues that all of his convictions are infirm because the trial court allowed a biased juror to remain on the jury. He also raises three challenges to his sentence. We conclude that the court did not err in examining the jury or in concluding there was no "good cause" for her removal, but made errors in calculating his sentence. We accordingly affirm his convictions, but direct that the abstract of judgment be corrected to remedy the errors in sentencing.

## FACTS AND PROCEDURAL BACKGROUND

The facts stem from four incidents. Tiffany King (King) was the victim of the first, and Andrea Charles (Charles) was the victim of the remainder. King and Charles each have a child with defendant.

On March 23, 2013, defendant smashed all of the windows of King's car with a lug wrench while King was sitting inside. Amidst the blows to the car, he struck King in the face.

On May 2, 2013, defendant broke into Charles's home, and began arguing with her. Eventually, he attacked and cut her with a box cutter.

On May 12, 2013, defendant approached Charles as she was walking home from a bus stop, then grabbed her and struck her with his fists.

On May 25, 2013, defendant entered Charles's home through a window. He demanded that she leave with him. When she refused, defendant dragged her out of the house and then beat her with his fists and a coffee mug.

The People charged defendant with seven counts as follows: For the lug wrench incident, assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] as count 1 and vandalism (§ 594, subd. (a)) as count 2; for the box cutter incident, burglary (§ 459) as count 3 and corporal injury to a child's parent (§ 273.5, subd. (a)) as count 4; for the bus stop incident, corporal injury to a child's parent (§ 273.5, subd. (a)) as count 5; and for the mug incident, burglary (§ 459) as count 6 and corporal injury to a child's parent

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

2

(§ 273.5, subd. (a)) as count 7.  The People also alleged two enhancements—great bodily injury (§ 12022.7, subd. (e)) and deadly or dangerous weapon (§ 12022, subd. (b)(1))—for the corporal injury counts during the box cutter and mug incidents.

The jury convicted defendant of counts 2, 3, 4, 6 and 7 as charged, but convicted him of misdemeanors of simple assault (§ 240) and battery on a child's parent (§ 243, subd. (e)(1)) as lesser-included offenses of assault with a deadly weapon charged in count 1 and corporal injury to a child's parent charged in count 5, respectively.  The jury found the enhancements for great bodily injury and use of a deadly weapon true.

The trial court sentenced defendant to a total of 16 years and 4 months.  The court selected count 4 (corporal injury on a child's parent for the box cutter incident) as the principal count, and imposed an upper-term sentence of four years.  On this count, the court further imposed a consecutive, upper-term five year sentence for inflicting great bodily injury and a consecutive, one year sentence for use of a deadly or dangerous weapon.  The court next imposed consecutive terms (calculated as one-third the middle term) for the remaining felony counts:  Eight months for count 2 (vandalism); 16 months each for counts 3 and 6 (burglary); and one year for count 7 (corporal injury to a child's parent).  To the sentence for count 7, the court additionally imposed a consecutive, upper-term sentence of 16 months for inflicting great bodily injury and an additional eight months for use of a deadly weapon.  The court ran sentences for the two misdemeanor offenses concurrently.

Defendant timely appealed.

## DISCUSSION

### I. Convictions

Defendant argues that all of his convictions must be overturned because the trial court erred in refusing to discharge Juror No. 3.

#### A. *Pertinent facts*

During voir dire, Juror No. 3 indicated that four years prior, she had witnessed her sister's then-husband beat her.  Although she initially indicated she would "automatically" believe a woman who said she had been beaten, she later retracted that

3

statement and also stated she "would have to hear both sides of the story." When the trial court asked the jurors as a group if they would be able to give the defendant a fair trial due to the nature of the charges and if they could follow the law, Juror No. 3 did not raise her hand to indicate she could not. The jury was thereafter empanelled and sworn.

The next day, and before opening statements, the trial court told the attorneys that Juror No. 3 had indicated that she "can't be a juror in the case." The court questioned Juror No. 3 regarding the basis of her concern, and she replied, "I just feel like I'm going to make the wrong choice with what happened to my sister. I don't want to make the wrong decision." The court then stated, "I cannot excuse you from this jury" but went on to conduct a hearing with that juror. The court noted that "making the right choices and decisions" was something "[the juror] do[es] every day . . . [and] has nothing to do with what happened to [her] sister." The court explained the role of a juror is to "listen objectively to all of the evidence" and to "decide, based on all of the evidence and the law . . . if the People . . . [have] proved their case beyond a reasonable doubt." The court asked Juror No. 3 if she understood, and she said she did. Defendant objected, asking that she be excused. The court overruled the objection, noting that the juror had "not brought up any new information" and that "she did not say she could not do the job" but was instead "concerned she would be unable to do so because of what happened to her sister," a concern put to rest by the court's questioning.

### B.  Analysis

Once a jury in a criminal case has been selected by both parties and sworn, a trial court's power to remove a seated juror is limited. (*People v. Cottle* (2006) 39 Cal.4th 246, 258-259 [but for section 1089, "[o]nce a jury has been sworn, the court lacks authority to reopen jury selection proceedings"].) A court may still remove a juror, but— as is pertinent to this case—only for "good cause shown to the court" that the juror is "unable to perform his or her duty." (§ 1089.)

A court is required to conduct a hearing—whether or not the parties request one, and even over their objection—if "'the court possesses information which, if proven to be true, would constitute "good cause". . . .'" (*People v. Cowan* (2010) 50 Cal.4th 401, 506

4

(*Cowan*), quoting *People v. Martinez* (2010) 47 Cal.4th 911, 942; *People v. Fuiava* (2012) 53 Cal.4th 622, 710 (*Fuiava*) [noting that court must "first decide" whether to conduct a hearing].)  Because a court confronted with possible grounds for dismissal must thread the proverbial needle between conducting an inquiry that is "adequate" but not "overly intrusive," a court is accorded "broad discretion" when it comes to "[t]he *manner* in which [it] conduct[s] its inquiry." (*Fuiava*, at pp. 710, 712; *People v. Clark* (2011) 52 Cal.4th 856, 971 (*Clark*).)  Removal is warranted only if the juror's bias or inability to perform her duties "appear[s] in the record as a demonstrable reality." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1348 (*Bradford*).)  Our review of the trial court's conclusion in this regard is "more comprehensive and less deferential" than typical, "substantial evidence" review (*Fuiava*, at p. 712):  Although we may not reweigh the evidence or presume good cause for removal (*ibid.*; *People v. Thomas* (1990) 218 Cal.App.3d 1477, 1484), we must be "confident that the trial court's conclusion is manifestly supported by evidence on which the court actually relied" (*Fuiava*, at p. 712).

Defendant challenges the sufficiency of the trial court's inquiry and the correctness of its decision not to excuse Juror No. 3.

With respect to the inquiry, defendant makes two arguments.  First, he contends that the trial court erred in not asking Juror No. 3, after obtaining her response that she understood her role as a juror, whether she could fulfill that role.  Defendant notes that the trial court in *Fuiava* conducted such a two-step inquiry into understanding and ability-to-follow, and argues that the court's failure to do so in this case amounts to an inadequate inquiry into the underlying factual basis of good cause that warrants reversal under *People v. McNeal* (1979) 90 Cal.App.3d 830, 838-839 (*McNeal*).

As an initial matter, defendant has forfeited this issue.  Although a defendant cannot by his own inaction forfeit the right to challenge the adequacy of the court's overall inquiry into juror bias (*Cowan*, *supra*, 50 Cal.4th at pp. 506-507), a defendant's failure to propose specific questions forfeits the right to argue that their omission, without more, was error.  (See *People v. Holloway* (2004) 33 Cal.4th 96, 126 (*Holloway*) [failure to "seek a more extensive or broader inquiry" forfeits right to object on appeal]; accord,

5

*People v. Burgener* (1986) 41 Cal.3d 505, 521 [defendant cannot object to trial court's inquiry and later seek reversal for failure to conduct that inquiry], overruled on another ground in *People v. Reyes* (1998) 19 Cal.4th 743.)

Defendant's challenge lacks merit in any event. A trial court investigating good cause may certainly ask a juror whether she can follow the rules governing a juror's role (e.g., *Fuiava*, *supra*, 53 Cal.4th at p. 713; *People v. Jablonski* (2006) 37 Cal.4th 774, 807; *Holloway*, *supra*, 33 Cal.4th at p. 126), but a court's failure to ask that question does not mean that its inquiry into good cause is deficient. Indeed, as our Supreme Court noted in *People v. Gutierrez* (2009) 45 Cal.4th 789, 807, "no authority . . . requires a trial court to ask a potential juror whether he or she could remain impartial and unbiased before excusing the potential juror for cause." Instead, we are to look at the totality of the court's inquiry to determine its adequacy. Here, it was adequate. The court had Juror No. 3's assurance, from the day before, that she could be fair. What is more, Juror No. 3 simply reported her concerns about not making the "wrong choice." In such an instance—and unlike in *McNeal*—there were no "new facts" to probe. (Compare *McNeal*, *supra*, 90 Cal.App.3d at pp. 838-839 [trial court erred in not asking juror about his unrevealed inside knowledge about case].) In light of the nature of Juror No. 3's possible unfitness, the court's subsequent questioning to ensure she understood her role, when coupled with her prior assurances about being fair and being able to follow the law, was sufficient.

Second, defendant argues that the trial court's inquiry was "coercive" because it was preceded by the court's comment that it "[could] not excuse [her]." Although the court's comment might be problematic standing alone, the court immediately proceeded to inquire whether excusal was warranted and thereby undermined its otherwise seemingly absolute declaration.

With respect to the trial court's ultimate ruling, we conclude that Juror No. 3's "bias or other disability" does not "appear in the record as a demonstrable reality." (*Holloway*, *supra*, 33 Cal.4th at p. 125.) Juror No. 3 did not unequivocally declare she could not follow the court's instructions due to her bias (*Fuiava*, *supra*, 53 Cal.4th at

6

p. 713; *People v. Collins* (1976) 17 Cal.3d 687, 696, superseded by § 1089) or due to an "anguished mental state" (*People v. Montes* (2014) 58 Cal.4th 809, 873-874). Instead, she indicated she could be a fair juror in a domestic violence case and could follow the court's instructions, shared her concerns the next day that she did not want to make the "wrong choice", yet nevertheless stated she understood her role as a juror and how it was separate from the incident involving her sister. At most, "the trial court possessed ambiguous information," but this does not establish a "demonstrable reality" of bias. (*Cowan*, *supra*, 50 Cal.4th at pp. 507-508.)

## II.    Sentencing

Defendant raises three challenges to his sentence: (1) the trial court erred in not staying, under section 654, all but one of the sentences imposed as to each incident; (2) the court erred in imposing a $500 domestic violence fine; and (3) the court erred in not explaining many of its discretionary sentencing decisions.

The People agree that defendant's first and second arguments have merit, and so do we. The conduct underlying the convictions in both counts 1 and 2 (simple assault and vandalism for the lug wrench incident), in counts 3 and 4 (burglary and corporal injury on a child's parent for the box cutter incident), and in counts 6 and 7 (burglary and corporal injury on a child's parent for the mug incident) was, for each incident, "incidental to one objective" and thus subject to only one punishment under section 654. (*People v. Wynne* (2010) 184 Cal.App.4th 1210, 1214-1215; § 654, subd. (a).) For the lug wrench incident, the injury to King was incidental to the vandalism; for the box cutter and mug incidents, the burglaries were incidental to the corporal injury to Charles. As a result, we conclude that the sentences for count 1 (simple assault), count 3 (burglary), and count 6 (burglary) must be stayed. (E.g., *People v. Conners* (2008) 168 Cal.App.4th 443, 458 [staying the offense that is incidental to the defendant's primary purpose].) There is also no question that the $500 domestic violence fine is authorized only when a defendant is placed on probation (§ 1203.097, subd. (a)), and defendant was in this case sentenced to prison; the fine must be vacated.

7

Defendant forfeited his right to press his final argument. A trial court is obligated to state its reason for any discretionary sentencing decisions. (*People v. Pierce* (1995) 40 Cal.App.4th 1317, 1321.) And the trial court in this case did not state why it selected the upper-term sentence for the corporal injury to a child's parent count underlying the box cutter incident (count 4); why it selected the upper-term sentence for the great bodily injury enhancement attendant to the corporal injury to a child's parent counts for the box cutter incident (count 4) or the mug incident (count 7); or why it imposed consecutive (rather than concurrent) sentences for count 2 (vandalism), counts 3 and 6 (burglary), and count 7 (corporal injury on a child's parent). However, because a trial court's omission in this regard can be easily remedied if a defendant simply asks the court at the sentencing hearing to explain its reasoning, a defendant's failure to make such a request forfeits his right to raise that deficiency on appeal unless the trial court gave him no "meaningful opportunity" to do so. (*People v. Scott* (1994) 9 Cal.4th 331, 356; *People v. Gonzales* (2003) 31 Cal.4th 745, 752.)

Whether defendant is entitled to a remand for resentencing consequently depends in this case on whether he had a meaningful opportunity to object during the sentencing hearing. He did. The trial court stated its intended sentence, and at no time evinced an unwillingness to consider counsel's input; indeed, the court asked counsel and the defendant questions. (Cf. *People v. Superior Court (Dorsey)* (1996) 50 Cal.App.4th 1216, 1223-1224 [no meaningful opportunity to object when trial court recessed immediately after imposing sentence and before parties had a chance to talk].) Defendant suggests that a meaningful opportunity only exists if the trial court initially phrases its decision as a tentative sentence and thereafter affirmatively solicits objections and input, but the law is to the contrary. (*Gonzales*, *supra*, 31 Cal.4th at p. 755 [so holding]; *People v. Boyce* (2014) 59 Cal.4th 672, 730-731 ["'[C]laims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' are subject to forfeiture"].) It is enough if the record shows that the trial court evinces a general willingness to entertain argument and input (*Gonzales*, at p. 755; *People v. Downey* (2000) 82 Cal.App.4th 899, 916), and the record here so indicates. We consequently

conclude that defendant has forfeited his right to challenge the absence of reasons underlying the court's discretionary sentencing choices.

## DISPOSITION

The superior court is directed to modify the abstract of judgment to stay execution of the sentences imposed on counts 1, 3, and 6, and to reflect that the domestic violence fine imposed under section 1203.097 is stricken, and to forward a copy of the corrected abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
BOREN


_____, J.
CHAVEZ

9